WHITMORE v. CANDLAND et al., State Board of Land Com'rs (VAN WAGONER, Intervener).

No. 2724. Decided Aug. 21, 1915. (151 Pac. 528.)

1. PUBLIC LANDS — SALE—APPRAISEMENT—IMPROVEMENTS—RECORDS OF COMMISSIONERS. Under Laws 1899, c. 64, requiring the board of land commissioners before sale of state lands to appraise them and improvements thereon, and to keep a record of its proceedings, but prescribing no form of record and requiring no oath, its record giving value of land, but leaving blank the columns as to improvements, with a blank oath signed by a commissioner, stating that the commissioners considered the matter of improvements, is evidence that they did so, and found them of no value. (Page 84.)

2. PUBLIC LANDS—IMPROVEMENTS—APPRAISEMENT BY BOARD—REVIEW. If the land commissioners acted in good faith and without fraud or collusion, though they grossly erred in their judgment in making an appraisement of improvements on state land required of them by Laws 1899, c. 64, before selling the land, the court cannot review it. ( Page 84.)

3. PUBLIC LANDS—IMPROVEMENTS—APPRAISEMENT BY SINGLE MEMBER OF BOARD. While an appraisement of state lands and improvements thereon by a single member of the board of land commissioners may be somewhat irregular, it is not void, under Laws 1899, c. 64, merely requiring that the board shall cause such appraisement to be made, and permitting it to appoint assistants, with a proviso that at least one member of the board shall assist in the appraisement; and this is especially so where the board's record shows that the appraisement was considered and approved by the board. (Page 87.)

4. PUBLIC LANDS—DISPOSITION BY BOARD—REVIEW. The whole matter of disposing of the state land being by Laws 1899, c. 64, placed in the hands and under the control of the board of land commissioners, the court cannot review their acts for correction of mere irregularities, but can only consider whether they have acted without or in excess of powers or jurisdiction. (Page 87.)

5. PUBLIC LANDS—IMPROVEMENTS—APPRAISEMENT—REMOVABLE IM-
PROVEMENTS. It is only removable improvements on state's lands
that the board of land commissioners is required by Laws 1899,
c. 64, to appraise; section 23 authorizing the owner of the im-
provements, instead of taking the appraised value, to remove the
improvements. (Page 88.)

Appeal from District Court, Third District; Hon. *F. C.
Loofbourow,* Judge.

Action for injunction by George C. Whitmore against W.
D. Candland and others, composing the State Board of Land
Commissioners; A. Delbert Van Wagoner intervening.

Adverse Judgment. Defendants and intervener appeal.

REVERSED and REMANDED, with directions.

*Herbert E. Smyth* for appellants State Board of Land
Com'rs.

*T. L. Mitchell* for appellant.

*Van Wagoner, Snyder & Snyder* for respondent.

FRICK, J.

On October 11, 1913, the plaintiff, hereinafter called re-
spondent, commenced this action in equity in the district
court of Salt Lake County against W. D. Candland, Wm. J.
Lynch, A. G. Giauque, T. H. Merrill, and John F. Chidester,
as members of and constituting the State Board of Land
Commissioners of Utah, hereinafter styled appellants, to en-
join or restrain said appellants from completing the sale of
certain school lands belonging to the State of Utah to one A.
Delbert Van Wagoner upon his application until said lands
and alleged improvements thereon should be duly appraised
by said appellants. Van Wagoner intervened in the action,
and he will hereinafter be called intervener. The complaint
is quite long, but the gist thereof is to the effect that respond-
ent for many years preceding the alleged attempted sale of
the lands in question had been in possession thereof, and had

made valuable improvements thereon before the alleged sale, and that the appellants have failed to comply with the statutes of this state hereinafter set forth in failing to appraise the improvements on said land, and for that reason had exceeded and were exceeding their powers and jurisdiction in attempting to sell the same to the intervener. Both the intervener and said appellants appeared in the action and filed answers to the complaint, in which they alleged facts showing that the statutes had been complied with. On a hearing the District Court found in favor of respondent, and enjoined the appellants and said intervener from completing the sale of said lands to the intervener until the appellants had duly appraised the same together with the alleged improvements thereon. Said land board and the intervener appeal.

The law in force, and which controls the questions involved in this proceeding, was adopted in 1899, and constitutes chapter 64, Laws Utah 1899. The material parts of that chapter are as follows: The first four sections of the act merely create the state board of land commissioners and provide for the qualification of the members and salaries, etc. This act, as we shall hereafter see, was merely amendatory of a prior act upon the same subject. Section 5 reads as follows:

"The board of land commissioners shall have the direction, management, and control of all lands heretofore, or which may hereafter, be granted to this state by the United States government, or otherwise, for any purpose whatever, except lands used or set apart for public purposes or occupied by public buildings, and shall have the power to sell or lease the same for the best interests of the state and in accordance with the provisions of this act and the Constitution of the state."

Section 6 provides:

"A majority of the board shall constitute a quorum for the transaction of business. A full record of its proceedings shall be kept by the secretary, who shall preserve all papers and documents submitted to the board."

Section 7 requires all lands to be selected and registered and "thereafter sold or leased." Section 9 reads as follows:

"The board shall cause the state lands and the improvements thereon to be appraised or reappraised at such times

as it may deem for the best interests of the state. The board may appoint one or more suitable assistants to select, locate or appraise all lands granted to the state: Provided, that at least one member of the board shall assist in making such appraisement, and that such selection or location shall be subject to the approval of the board.''

Section 14, so far as material here, provides:

''In all counties where the public lands, or any portion thereof, have been appraised, the board shall, when deemed conducive to the best interest of the state, attend in person or by agent, at such time as the board shall direct, and offer at public auction at the courthouse of the county, and sell to the highest bidder all or any of the appraised and unsold and unleased lands situated in the county where such public auction is held: Provided, that no land shall be sold for less than the appraised value thereof and that not more than one hundred and sixty acres, nor less than a legal subdivision, except as hereinafter provided, shall be sold to any one individual, company, or corporation.''

Section 23 reads as follows:

''Any person purchasing land upon which improvements have been made by any other person, and appraised as provided in section 9 of this act, shall pay to the secretary of the board, in addition to the amount of principal and interest required by law to be paid at the time of sale, the full appraised value of such improvements. The amounts thus paid for improvements shall be paid by the secretary of the board to the owners of such improvements, unless such owners shall elect, within ninety days after such sale, to remove the improvements and remove the same, for which purpose he shall have the right to go upon the land. In case the owner elects to remove the improvements, and remove the same within the said ninety days, the secretary shall return to the person by whom it was paid the amount paid for improvements.''

Section 25 provides:

''Whenever the board shall have exposed for sale at public auction any lots of the lands of this state pursuant to law, and any of such lots shall remain unsold, the board may, in its discretion, issue certificates for the sale thereof to such per-

sons, respectively, as shall thereafter make application for any of the said lots, at not less than the appraised value.''

Section 39 reads thus:

''The board shall have power to make all needful rules and regulations, not inconsistent with the provisions of this act, for carrying the same into effect, and shall supply all records, books, and papers that may be required for the purposes of this act.''

In our judgment the foregoing sections cover all of the questions that are involved in this appeal.

Appellants attempted to prove, and, as they contend, did prove, that the provisions of the foregoing sections had been complied with by making appraisement of the lands in question and improvements thereon in the manner hereinafter stated, and had offered said lands for sale at public auction, and, not being able to sell the same when so offered, had thereafter sold the same at private sale to the intervener upon his application duly made, all as required by said statute. It was made to appear, however, that respondent entered a protest and for that reason the sale was not fully consummated. The District Court found that there were improvements on the lands in question when the alleged appraisement was made, and that such improvements had not been appraised as required by the statute. The court also ruled that under the statute it was necessary to appraise the improvements on said lands, and that such appraisement was a condition precedent to the right or power of the appellants to sell such lands either at public or private sale. The appellants and the intervener have filed but one brief, and they all join in the errors assigned and argued.

Counsel for appellants and the intervener in substance contend that the judgment should be reversed for the following reasons:    (1) Because the appraisal of the improvements, if any, that are on school lands, is not a condition precedent, and that a failure to appraise such improvements did not affect the power or jurisdiction of the appellants to make a sale of the lands in question either at public or private sale; (2) because the improvements on the lands in question, if any there were, were in fact duly appraised; (3) because the

respondent did not show good faith in instituting this proceeding; and (4) because the appellants while acting as a board had passed on the matters relating to the making of said appraisement, etc., and that their findings upon questions of fact are conclusive and not reviewable by the courts. Respondent's counsel contend: (1) That appellant's propositions 3 and 4 are not involved on this appeal; (2) that an appraisal of the state's lands, with the improvements thereon, if any, is a condition precedent to the right of appellants to offer for sale or sell such lands; (3) that the respondent had placed valuable improvements on the land in question before the alleged appraisement thereof was made; and (4) that no appraisement of said improvements had ever been made, and that for that reason the appellants exceeded their power or jurisdiction in offering said lands for sale and in attempting to sell the same to the intervener upon his application. Counsel for respondents have also raised another question which we shall refer to hereafter.

For the reasons hereinafter appearing we shall not consider appellants' third and fourth propositions. While the writer, as at present advised, is inclined to the opinion that a failure to appraise improvements that may have been placed on the state school lands under chapter 64, supra, where the land has in fact been appraised, is merely an irregularity, and is not jurisdictional, yet if it should be found that the lands in question and the improvements thereon were in fact appraised substantially as required by the statute, then the question of whether such appraisement is jurisdictional or not is immaterial for the purposes of this decision, and for that reason we express no opinion upon that question. The question, therefore, is: Were the improvements on the lands in question appraised in substantial compliance with the statute? Upon that question the record of the state land board was produced. It was made to appear therefrom that in the year 1901 the membership of the state land board was entirely different from what it was when this action was commenced; that in that year one Thomas D. Rees was a member of said state land board; that said board had provided blank records in which the appraisements were duly recorded when made.

The blanks upon which the return of appraisements were made were divided into ten columns, which were headed thus: Column 1 contained the words, "Improved, Yes or No"; column 2, "Occupied, Yes or No"; column 3, "No. Acres"; column 4, "Value per Acre"; column 5, "Total Value of Land"; column 6, "Value Improvements"; column 7, "Value Timber"; column 8, "Owner"; column 9, "Occupant"; and column 10, "Address." In the record as it was kept by the board, nothing was written in either the first or second columns. In the third column were written the figures 640.64, that is, 640.64 acres; in the fourth column were written the figures 2.50, that is, the value per acre, which was $2.50; in the fifth column were written the figures 1601.60, that is, "total value of land" was $1,601.60. Now, if 640.64, the number of acres, is multiplied by $2.50 per acre, the total value will be found to be $1,601.60 as shown in the record. To this record was appended a blank oath, which was signed thus, "Thos. D. Rees, Com.," and below the signature was the printed word "Appraiser." The record also showed that the land appraised was all of section 2, township 15 south, range 13 east. The land in question is the southeast ¼ of the southeast ¼ and the north ½ of the southeast ¼, section 2, township 15 south, range 13 east. An indorsement on the record shows that it was filed December 4, 1901. The blanks in the oath were not filled in. The oath reads as follows:

"——, of ——, Utah, and ——, of ——, Utah, being first duly sworn, each for himself, and not for the other, says, that he is a duly appointed and qualified appraiser for —— county, Utah, in which capacity he himself, in his own proper person, in the presence of his associate appraiser, herein named, viewed and carefully examined the above described parcels of land, together with improvements thereon, and that the within and foregoing descriptions and values are true and correct according to his best judgment and belief."

This blank oath was signed by Commissioner Rees as before stated. The minutes or record kept by the state land board also showed that the appraisements made by Commissioner Rees were "received and approved." Those records also showed that the lands in question were offered at public auc-

tion, as required by the statute on February 10, 1902, and were not sold for want of bidders, and were subsequently sold at private sale to the intervener upon his application. It was also shown that the records of the board were kept in such manner that in case no improvements were on the lands, or where no value was allowed for improvements, the columns before referred to were left in the condition shown by the record in question; that is, the columns were left blank. These matters were, however, only made to appear from an inspection of the records, and not from the direct testimony of any witness who kept the same at the time the record was made. It was, however, shown by a witness that that method of keeping the record was continued. It was also shown that the oaths signed by the commissioners, when a commissioner made the appraisements, were usually left blank the same as the oath in question. This was also made to appear from the records as kept.

Upon substantially the foregoing evidence the court found that the improvements on the lands in question had not been appraised. We have no means of knowing what induced the court to arrive at that conclusion, unless we assume that the court adopted and followed the reasoning of respondent's counsel, which is to the effect that the record itself discloses that the improvements in question had not been ap-       **1, 2** praised as required by the statute. Counsel contend that this is so because the alleged appraiser said nothing and made no record regarding that question. Their contention is that; in view that the several columns referred to were left entirely blank, it constitutes conclusive evidence that the appraiser did not consider or appraise any improvements. They say that, if the appraiser had written in the column which was headed "Value Improvements" "One Dollar," or had written the word "Nothing," or "Nil," or had in some other way indicated that he had considered and appraised the improvements, then the case would be different. Counsel further contend in that connection that the blank oath which was signed by the appraiser, and which contained the statement that the signer thereof had "carefully examined the above described parcels of land, together with improvements thereon," can be given

no effect because the blanks were not filled in in the oath. In making such a contention it seems to us counsel entirely overlook or disregard the provisions of the statute. There is nothing in the statute which required the appellants to keep any particular form of record; nor is there anything requiring them to make oath that the lands or improvements thereon, if any, had been appraised. All the statute required was that a record be kept, which was done. True, the record with respect to detail seems imperfect; but that is not a matter the courts can control.

It is, however, further contended, and some cases are cited in support of the contention, that in view that the blanks contained in the several columns of the record and in the oath were not filled in, therefore the whole record is without force or effect. Here again counsel assume that the statute required a particular record to be kept. The cases referred to by counsel, namely, *Hayden* v. *Westcott,* 11 Conn. 129; *Hiss* v. *McCabe,* 45 Md. 77, and a few others, no doubt state the law correctly; but in those cases reference is made to blanks left in verdicts and in acknowledgements and other similar records, where it was absolutely necessary to fill in the blanks to complete the record sought to be made. Not so here. Here there were two blank columns in which values as fixed by the appraisers, if any, were to be written. In one the value of the land itself was to be inserted; in the other, the value of the improvements on the land, if there were any. Now, generally speaking, the state lands were not only wild and uncultivated, but, in most instances, were arid and valueless, without water, except for grazing purposes for cattle or other live stock. Improvements on such lands must of necessity have been rare, and the general rule, therefore, was that there were no improvements. This was especially true of the state lands which remained unsold after the law of 1899 was adopted. Prior to that law, as we shall see hereafter, the Legislature had passed a law by which all those who had settled on state lands and had made improvements thereon in good faith were given a preference right to purchase the lands by making application as provided in the statute within the time limit therein. The lands with improvements thereon

were therefore specially provided for, and the statute we have set forth had reference to state lands upon which improvements had been made, or where for some reason no application for purchase had been made under the prior act.

It is only reasonable to infer, therefore, that where the appraisers found no improvements, or considered them of no value, if any they found, they usually left the improvement column blank, and inserted the value of the land, without improvements, in the land value column, just as the record shows. When, therefore, the statement contained in the blank oath is considered, namely, that the appraisers considered the matter of improvements, the foregoing conclusion is certainly reasonable. It must be remembered that the statement was signed by Commissioner Rees, and it must be presumed that it was signed with full knowledge of what it contained. While the fact that the blanks in which the value of the improvements should have been given were not filled it might detract somewhat from the weight that may be given to the record, yet such fact cannot destroy the record as evidence. We have the record showing that the improvements were considered by the appraiser but were by him found to have no value. This conclusion is strengthened from circumstances which were made apparent at the hearing. The intervener and his witnesses testified that the improvements on the land were valueless, while the respondent and his witnesses testified they were valuable. The appraiser may have viewed the matter as did the intervener and his witnesses. The District Court apparently determined that question for itself, and determined it in favor of respondent. Assuming that the appraisement is jurisdictional, yet the only question before the court was whether the provisions of the statute had substantially been followed in making the appraisement. The court had no power to review the appraisement, although the appraiser may have grossly erred in his judgment as to value or may have seriously erred in considering certain so-called improvements valueless. If, however, he acted in good faith nad without fraud or collusion, and none is claimed here, his acts are not reviewable by the courts.

But counsel insist that the appraisement, if one was

made, was insufficient because it appears that it was   **3, 4**
the act of but one appraiser. Here again counsel over-
look the requirements of the statute as we construe it. The
statute merely required that:

"The board shall cause the state lands and the improve-
ments thereon to be appraised or reappraised at such times
as it may deem for the best interests of the state."

To comply with such requirement the statute also provided:

"The board may appoint one or more suitable assistants to
select, locate, or appraise all lands granted to the state: Pro-
vided that at least one member of the board shall assist in·
making such appraisement." [q]

Now, because the statute provides for the appointment of
assistants, and for the further reason that it is said that "at
least one member of the board shall assist in making such
appraisement," it is contended that it required at least two
appraisers to make a legal appraisement. We do not so read
the statute. The statute did not make it obligatory upon
the appellants to appoint either one or more assistants. All
the statute did was to confer power upon them to appoint one
or more assistants. The plain import of the statute is that,
in case an assistant was appointed and acted as an appraiser,
then at least one member of the board shall assist in making
the appraisement. It is, therefore, not equivalent to a statu-
tory direction that any particular member of the board, or
that more than one member, should be present when an ap-
praisement was made. Besides, the record shows that the
appraisement in question was considered and approved by the
board. While such an appraisement might perhaps still be
deemed somewhat irregular, yet it cannot be held to be en-
tirely void and of no force or effect, and clearly not upon
what in its nature is a collateral attack, without any claim
of fraud or collusion by or between any persons.

Again, courts should consider attacks upon the records of
the State Land Board with considerable care and caution. If
such records can be assailed at any time, or reviewed by the
courts for any cause, no one is secure where his rights may
be based upon such a record. The statute having prescribed
no specific method of making or keeping a record, the courts

can prescribe none. The whole matter of making disposition of the state's land was placed in the hands and under the control of the State Land Board. No right of appeal to the courts, or of reviewing the board's actions otherwise by the courts, except where lack or excess of power is alleged, has been given. All the courts can do, therefore, is to inquire into and determine in a proper proceeding whether the board has acted without or in excess of its powers or jurisdiction. Courts may not review the acts or conduct of the board, for the purpose of correcting mere irregularities. It seems to us that at the very most all that respondent has complained of and proved constituted mere irregularities which the courts are powerless to correct.

This brings us to the last proposition presented on this appeal. At the hearing respondent's counsel contended that, even though it be held that the alleged fences placed on the land by respondent are of little or no value, or that he could remove the same if he thought they were of value, yet that he had made other valuable improvements on the land, which should be appraised, and for which he should be allowed; none of which he could remove from the land. In that connection respondent produced evidence to the effect that he had removed brush from the land and had broken up some of the original sod or soil, etc. The court, however, ruled that he was not entitled to recover for the things last referred to, because they did not constitute the improvements contemplated by the present statute. His counsel assign cross-error upon the court's ruling, and now urge that it erred in that regard.

We think the court ruled correctly. Under a prior statute already referred to all occupying claimants of such lands were given a preferential right to purchase, if they made application to do so within the time fixed by the statute. See Laws of Utah, 1896, pp. 238, 242. Chapter 64 of the Laws of 1899, a part of which we have before quoted, is merely an amendment of the prior law of 1896. That portion of the statute giving preferential rights was omitted from chapter 64. Under the law of 1896 anything which added to the value of the land constituted improvements. It was there provided:

"Improvements within the meaning of this section (section 19) shall be held to mean anything permanent in character, the result of labor upon or in connection with the land, which has enhanced the value of the same beyond what said land would be worth had it been permitted to remain in its original state."

It would seem, therefore, that in view that the time within which preferential rights to purchase had expired when chapter 64 was adopted, the Legislature had a right to assume that all those who had made improvements on state lands, and who desired to avail themselves of the preferential right, had done so, and hence there was no longer any necessity for an enlarged right to recover for improvments. That is, the Legislature could well assume that there were practically no lands remaining upon which occupying claimants had made valuable improvements when the amendatory act of 1899 was passed. The Legislature could, however, still make provision for improvements, if any, as it saw fit. In the act of 1899, therefore, no right was given except for removable improvements, as appears from section 23 of that act, which we have hereinbefore quoted. By the latter act, therefore, if the occupant refused to accept the value of the improvements as fixed, he was given the right to remove the same from the land, if he did so within the time specified in the act. Now, if the appraisers considered any improvements they found upon the land as possessing no value, and the claimant thought otherwise, he still could remove them. In the nature of things such cases might arise. Then, again, the provision limiting the improvements to such as were removable by the act of 1899 was quite reasonable, in view that ample provision had theretofore been made to protect all kinds of improvements made by occupying claimants of state lands, or of government lands before the same passed to the state. Under all the circumstances it was but natural that the Legislature should restrict the right to make claim for improvements in the act of 1899. If the claimant neglected or refused to avail himself of his preferential rights, or went upon state lands after the time had expired within which preferential rights could be made, the Legislature could well curtail his rights to claim improve-

ments placed upon state lands without any right or authority whatever. Indeed, the Legislature could legally have denied the rights for improvements to such claimants. In view of all those circumstances, we think the court's ruling that respondent was restricted to such improvements as were movable was clearly right.

Moreover, the commissioner's conclusion that the improvements claimed by respondent are of no value is sustained by all of the witnesses produced by the intervener, as well as by his own testimony. All testified that the fences were mere brush fences and of no value. It is true that respondent and his witnesses testified to the contrary; but this merely shows a difference of opinion. This difference of opinion by fair and honest men again meets and destroys the inference contended for by respondent that, because the commissioner making the appraisement allowed nothing for improvements, he therefore did not consider or appraise them. In any view that may be taken, therefore, the judgment should not prevail. In view, however, that the sale in question is not completed within the purview of section 23, *supra*, respondent, if he desires to do so, may still remove his movable improvements from the land in question, if he will do so within the time specified in that section. That is all that he could have done in any case, or that any claimant could do, if he thought his movable improvements of greater value than that fixed by the appraisers.

We desire to add, in conclusion, that we have devoted much time and space to this case, not because of the amount in controversy, but because of the importance of the principles that are involved. This case could have been decided either way without conferring much benefit on the one, or without inflicting any substantial injury upon the other, of the two claimants. To have affirmed the judgment, however, might produce much injury to the state, by destroying the effect to be given to the records of a public board or body, and by perhaps affecting the rights of hundreds of purchasers of the state's lands. Such results should be obviated, unless the acts complained of were taken without authority of, or contrary to, law. In our opinion such is not the case here.

The judgment of the District Court of Salt Lake County is therefore reversed, and the cause is remanded to that court, with directions to set aside the injunction heretofore granted and to dismiss the complaint. Appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.