## DECORSO v. THOMAS et al.

No. 5634.   Decided October 31, 1935.   (50 P. [2d] 951).

*H. H. Henderson*, of Ogden, for appellant.

*P. L. Nelson* and *Royal J. Douglas*, both of Ogden, for respondent.

ELIAS HANSEN, Chief Justice.

This appeal is prosecuted by O. H. Mohlman. He complains because the court below adjudged and decreed that a lease which he had with the state land board of Utah was held in trust by him for the use and benefit of a copartner-

ship consisting of plaintiff and defendants Clayborne Thomas and Virgil Thomas doing business under the firm name and style of D. & T. Spring Salt Company. Appellant further complains because the judgment was rendered against him in favor of that copartnership for the sum of $33.76, and because judgment was rendered against him and Clayborne Thomas for costs incurred by the plaintiff in the trial of that cause. Twenty errors are assigned, most of which are directed against the findings of fact and conclusions of law. Some of the assignments attack the ruling of the court below in the admission of evidence. Plaintiff and respondent has assigned cross-errors, but he does not cross-appeal.

Under date of April 29, 1933, plaintiff brought suit against defendants Clayborne and Virgil Thomas for an accounting and for the dissolution of the copartnership theretofore existing between them. He prayed that a receiver be appointed with the usual powers, and that such receiver, when appointed, take possession of the partnership property consisting of a lease on about 32 acres of salt beds, together with the equipment thereon. The salt beds in controversy are on or near the shore of Great Salt Lake in Box Elder county, Utah. On May 8, 1933, the defendants Thomas answered the complaint. They admitted the existence of the copartnership, but denied generally the other allegations of the complaint.

By leave of court and on July 29, 1933, plaintiff filed an amended complaint. In the amended complaint the state land board of Utah, George A. Fisher, L. R. Anderson, and Frank Tolton, commissioners of the land board, and appellant O. H. Mohlman were made defendants. It is in substance alleged in the amended complaint that the additional defendants, added in the amended complaint, are necessary and indispensable parties to this action; that on July 20, 1931, plaintiff and defendants Thomas formed a copartnership to be known as the D. & T. Spring Salt Company for the purpose of mining, digging, and selling salt from certain

particularly-described salt beds located at Promontory Point, Box Elder county, Utah; that by the terms of the copartnership plaintiff was the owner of five-twelfths, defendant Clayborne Thomas five-twelfths, and Virgil Thomas two-twelfths thereof. The profits derived from the venture were to be divided annually in proportion to the share owned by each, and the losses were to be borne in the same proportion; that soon after the partnership agreement was entered into the copartnership began mining and marketing salt and continued to do so until on or about March 1, 1933, when the defendants Clayborne and Virgil Thomas excluded plaintiff from further participation in the partnership business; that the Thomases have appropriated to their own use the copartnership property, including large sums of its money, and have refused, and still refuse, to render an accounting to plaintiff; that the Thomases are insolvent; that prior to the formation of the copartnership by plaintiff and defendants Thomas, the defendant state land board leased the salt lands in controversy to one J. B. Robinson who by and with the consent of the land board assigned and transferred the lease to defendant Clayborne Thomas, who in turn transferred the lease to the copartnership which is, and since its formation has been, the owner of such lease; that since the copartnership was formed the state land board has accepted from the copartnership and from plaintiff payments of rents and royalties on the leased land; that the state land board and its commissioners have been fully advised and know that the copartnership is, and since its formation has been, the owner of the lease involved in this litigation; that on October 15, 1932, the defendants Thomas pledged all of their rights in and to the lease in question to the plaintiff as security for the payment of a loan made by plaintiff to defendant Clayborne Thomas in the sum of $210.40, and to defendant Virgil Thomas in the sum of $86.50; that neither of such loans have been paid; that on or about May 5, 1933, and again on May 24, 1933, plaintiff notified the state land board and its commissioners and employees orally and in

writing that the copartnership owned the lease and the defendants Thomas had pledged their interests therein to plaintiff as security for the money loaned to the Thomases, but notwithstanding such oral and written notices so given, and notwithstanding plaintiff requested the land board not to deal with Clayborne Thomas with respect to the leased salt beds, the state land board and its commissioners on June 8, 1933, accepted from defendant Clayborne Thomas a purported release and surrender of the lease on the salt beds; that defendant O. H. Mohlman had knowledge of the copartnership agreement between plaintiff and the Thomases and had knowledge of the pendency of an action in the district court of Weber county with respect thereto, and knew that plaintiff had made loans to the Thomases and had taken as security for the payment of such loans the interests of the Thomases in the lease of the salt beds, yet notwithstanding the defendant O. H. Mohlman had knowledge of such facts, he, with intent to defraud and cheat plaintiff, induced Clayborne Thomas to execute the release and surrender to the state of Utah all of his rights in the lease of the salt beds so that the defendant O. H. Mohlman could acquire in his own name the lease to such salt beds; that the defendant O. H. Mohlman did acquire the purported lease to the salt beds in question, and since the lease was so acquired by defendant O. H. Mohlman he and defendants Thomas had continued to operate the salt beds and have retained for their own use and benefit all of the proceeds derived therefrom; that unless defendant O. H. Mohlman is restrained from transferring his pretended lease he will dispose of the same to the irreparable injury of the copartnership and plaintiff; that plaintiff has no plain, speedy, or adequate remedy at law. Plaintiff prays that the purported lease held by O. H. Mohlman be declared to be held in trust by him for the use and benefit of the copartnership, and that he be required to account for the proceeds which he has acquired from the lease. Plaintiff further prayed that the defendant state land board and its commissioners be restrained and enjoined from

transferring the lease, and also that the defendants Thomas render an accounting, and that the partnership between plaintiff and the Thomases be dissolved.

To the complaint the defendant O. H. Mohlman filed an answer in which he admitted that he knew of the working agreement between plaintiff and the Thomases and that there was a controversy between them respecting the same; he also admitted he acquired from the state land board a lease of the salt beds in controversy. He denied the other allegations of the complaint. The defendants Thomas answered the complaint, but as they do not appeal we are not, on this appeal, concerned in the controversy between them and the plaintiff. It appears service of summons was had upon the defendant George A. Fisher, executive secretary of the state land board, as and for the state land board. Mr. Fisher was also served with summons as a commissioner of the state land board. So far as appears, the other two commissioners of the state land board were not served with summonses, and they entered no appearance in the cause. Defendants state land board and George A. Fisher, its executive secretary and a commissioner thereof, filed in the cause a notice that they would move the court to set aside service of summons upon them. However, so far as is made to appear, no such motion was ever made. No other pleadings were filed in the cause by the state land board or by its commissioners. Their default for failure to answer or otherwise plead was entered.

Upon the issues thus raised by the complaint and the answer of defendant O. H. Mohlman, the court below found that Mohlman held the lease on the salt beds in trust for the copartnership consisting of the Thomases and plaintiff. Mohlman was required to and did render an accounting. As a result of that accounting the court found that at the time of the trial defendant Mohlman had received from the leased salt beds $33.76 more than he was entitled to retain for his own use, and rendered judgment against him for that amount.

The principal question which divides the parties is whether or not under the pleadings and the evidence offered and received the defendant Mohlman held the lease of the salt beds in trust for the use and benefit of the copartnership. The defendant Mohlman did not attack the complaint by demurrer or otherwise, except that soon after the commencement of the trial he did object to the introduction of any evidence as to him because, as he urged, the complaint failed to state sufficient facts to constitute a cause of action against him. For reasons presently to be discussed, the complaint states a cause of action against the defendant Mohlman. The evidence, without substantial conflict, establishes the following facts: On June 26, 1928, the state land board of Utah leased to one J. B. Robinson about 32 acres of salt beds involved in this litigation. The lease was made under and pursuant to Laws of Utah 1925, c. 31. The lease granted to the lessees the "exclusive right and privilege of mining and operating for commercial salt" on the leased land. The lease was "for an indeterminate period, upon the condition that at the end of each twenty-year period succeeding the first day of the year in which this lease is issued such readjustment of terms and conditions may be made as the lessor may determine to be necessary in the interest of the State of Utah." The lessee was by the terms of the lease required to pay annually 50 cents per acre and a monthly royalty of 65 cents on each ton of commercial salt produced; the annual rental to be credited on the royalty. The lease contained a provision that the lessees would not "assign this lease or interest therein, nor sublet any portion of the leased premises, or any of the rights and privileges herein granted, without the consent of the lessor first had and obtained." The lease contained a further provision that "upon failure to pay said rent or royalties, or upon failure to comply with any of the conditions, provisions, or covenants of this lease, the lessor may, at its option, after thirty days notice by registered mail cancel the lease," and also that, "upon failure or refusal of the lessee to accept the re-

adjustment of the terms and conditions demanded by the lessor at the end of any twenty-year period, such failure or refusal shall work a forfeiture of the lease and the same shall be canceled."

Under date of October 19, 1931, by and with the consent of the state land board, J. B. Robinson assigned his lease to the salt beds to the defendant Clayborne Thomas. On July 20, 1931, plaintiff and defendants Thomas entered into an agreement whereby they formed a copartnership, which agreement was reduced to writing on September 30, 1931. The partnership was formed for the purpose of mining, gathering, loading, and selling salt secured from the salt beds covered by a lease between the state land board and defendant Clayborne Thomas. By the terms of the partnership agreement defendant Clayborne Thomas was to transfer to the partnership the Robinson lease which he was about to purchase. As his share of the venture, plaintiff, so it is recited in the partnership agreement, had advanced money for partnership purposes. The partnership was to commence within 30 days, and to continue for one year. Under the terms of the agreement, none of the partners should enter into any contract with respect to partnership business without the consent of the others. In the event the partnership was dissolved, a value was to be placed on the partnership property, and when the price was so fixed the partners had a right to purchase or sell at such price. The other provisions of the partnership agreement need not concern us on this appeal. On October 13, 1932, defendants Clayborne Thomas and Virgil Thomas each entered into an agreement in writing whereby each transferred and set over to plaintiff all of his title and interests in the partnership as security for the payment of money to the plaintiff. In the case of Clayborne Thomas the amount so secured was $210.40. In the case of Virgil Thomas the amount was $86.50. The money, so the agreement recites, was to be repaid to plaintiff as their respective proportions of $450 which plaintiff had theretofore advanced for the use and

benefit of the copartnership. That such money was so advanced is not disputed. In the latter part of February or early part of March, 1933, the defendant Clayborne Thomas stated to plaintiff that as the partnership was not paying he, Thomas, would take over both ends of the business. Theretofore plaintiff had taken care of the business in the office which was located at Ogden, while the Thomases had attended to the operation of the salt beds. At about that time defendant Clayborne Thomas held a meeting at which he was the only partner present. The plaintiff was notified, but did not attend. At that meeting defendant Clayborne Thomas elected himself president and manager of the copartnership and voted himself a salary. Thereupon defendant Clayborne Thomas notified those who theretofore had been doing business with the copartnership that the management and place of business had been changed, and requested the debtors to make payment of bills at the new address. Upon learning of what had been done, plaintiff attempted to secure a settlement of the partnership account. The partners were unable to agree upon their accounts. The defendant Mohlman learned of the dispute that the partners were having about their accounts, and talked with both plaintiff and defendant Clayborne Thomas about buying their respective interests. No agreement, however, was reached with respect thereto. Plaintiff filed his original complaint in this cause on April 27, 1933. Theretofore, on April 20, 1933, summonses were served upon the defendants Thomas. On that same day defendant Clayborne Thomas gave to defendant Mohlman a bill of sale for 500 tons of salt in piles at $1.35 per ton, and 1,500 tons of ungathered salt. in bed at 55 cents per ton, and five cents per bag for all bags furnished by the copartnership. The salt was to be delivered at the salt beds. Defendant Mohlman sold and shipped some of the salt before he was made a party to this proceeding, but plaintiff notified the purchasers not to pay Mohlman for the salt, and so far as is made to appear Mohlman was not paid for the same. On May 1, 1933, a hearing

was had on the application of plaintiff for the appointment of a receiver of the property of the copartnership. Defendant Mohlman was present at that hearing. On May 10, 1933, the state land board addressed a letter to Clayborne Thomas in care of the D. & T. Spring Salt Company, 362 Twenty-Fourth street, Ogden, Utah, which was the address of the plaintiff, notifying him that he was delinquent in his payment of royalties for the months of March and April, and requested payment within 10 days to avoid cancellation of the lease. On May 18, 1933, defendants Clayborne Thomas and O. H. Mohlman came to Salt Lake City, and there conferred with the officers of the state land board with respect to the payment of back royalties. They were unable to secure an extension for the time of payment, and thereupon returned to Ogden and asked plaintiff to release certain money that was owing to the copartnership by P. C. Richardson & Co. so that the royalties could be paid. Plaintiff refused the request. On May 20, 1933, defendants Clayborne Thomas and O. H. Mohlman again went to the state land board and asked for additional time in which to pay the royalties owing for the salt removed from the leased salt beds. The land board refused any extension of time in which to pay, whereupon defendant Clayborne Thomas borrowed from defendant O. H. Mohlman the sum of $59.50 with which to make payment, and the same was paid. On May 24, 1933, plaintiff served notice orally and in writing on the state land board advising it that the lease for the salt beds had been operated by a copartnership consisting of plaintiff and the Thomases; that plaintiff had advanced considerable money for the harvesting and marketing of salt; that in addition to the money advanced to the copartnership plaintiff had advanced money to the Thomases, which loan was secured by the Thomases pledging their interest in the lease to the salt beds; that defendant Clayborne Thomas had attempted to exclude plaintiff from the partnership and from participating in the control of its property; that there were a large number of outstanding obligations against the

partnership; that suit had been commenced by plaintiff for an accounting and for winding up the affairs of the partnership; that the Thomases were hopelessly insolvent and plaintiff was informed that defendant Clayborne Thomas was about to assign to others the lease to the salt beds. On the same day that such notice was given to the state land board, that is, on May 24, 1933, the state land board served by registered mail a notice addressed to Clayborne Thomas in, care of the D. & T. Spring Salt Company advising him that unless within 30 days the royalties for the month of April were paid the lease to the salt beds would be canceled. On June 8, 1933, defendants O. H. Mohlman and Clayborne Thomas again went to the state land board, and there defendant Clayborne Thomas requested the state land board to release the lease to the salt beds. The request was granted, and accordingly the lease was canceled. Thereupon, O. H. Mohlman made application for a lease to such lands, and upon payment to the state land board of the sum of $119 (the same being the amount owing to the state land board for royalties theretofore standing in the name of Clayborne Thomas) the state land board executed a lease to the salt beds in controversy to the defendant O. H. Mohlman. It is that lease which plaintiff claims and the court below found was held in trust by the defendant Mohlman for the use and benefit of the copartnership. At the time defendant Clayborne Thomas surrendered his lease to the salt beds and a new lease was made out in favor of defendant Mohlman the latter agreed to employ the former at a salary of $75 per month. It further appears from the evidence that the state land board, during the time the copartnership was removing salt from the leased lands, accepted payments of the rent and royalties on such lands from plaintiff for and on behalf of the copartnership. There is a conflict in the evidence as to what was said by plaintiff at the time defendants Clayborne Thomas and O. H. Mohlman requested plaintiff to release the money owing the copartnership by P. C. Richardson & Co. so that the royalties could be paid.

Defendants Clayborne Thomas and O. H. Mohlman each testified to the effect that at that time plaintiff said that he was through with the salt beds. The testimony of plaintiff and his wife is to the effect that no such statement was made by plaintiff. The foregoing is in substance all of the testimony touching the question of whether or not the defendant Mohlman holds the lease to the salt beds in trust for the copartnership.

It is one of the contentions of appellant that if plaintiff has any remedy on account of the acts complained of his remedy is an action at law for damages because he was evicted from the premises covered by the lease on the salt beds. In support of such contention he cites 3 Sedgwick on Damages (9th Ed.) p. 2053, and 36 C. J. 73. The cited texts are authority for the doctrine that a suit for damages is available to a tenant who is wrongfully evicted by a landlord. But neither the text, nor the cases cited in support thereof, hold that in such case an action for damages is the exclusive remedy. On the contrary, "Where land, or any estate therein, is the subject-matter of the agreement, the inadequacy of the legal remedy is well settled, and the equitable jurisdiction is firmly established." The rule applies to contracts of lease as well as contracts of sale. 5 Pomeroy's Equity Jurisprudence (2d Ed.) p. 4969, § 2167.

"The regulation and enforcement of trusts is one of the original and inherent powers of a court of equity, and with the exception of such as are given to other courts, the jurisdiction of equity in all cases of trusts, express or implied, resulting or constructive, is unquestioned, especially where matters of account are involved." 21 C. J. 116.

That a suit by one partner for an accounting and for the dissolution of a copartnership is a proper subject-matter of equity jurisprudence is established beyond controversy. 5 Pomeroy's Equity Jurisprudence (2d Ed.) p. 5223, § 2363. The law is also well established

"that the purchaser of an estate or interest, legal or equitable, even for a valuable consideration, with notice of any existing equitable estate, interest, claim, or right, in or to the same subject-matter, held by a third person, is liable in equity to the same extent and in the same manner as the person from whom he made the purchase; his conscience is equally bound with that of his vendor, and he acquires only what his vendor can honestly transfer." 2 Pomeroy's Equity Jurisprudence (4th Ed.), p. 1383, § 688.

Applying this familiar principle to the case in hand, if the copartnership of plaintiff and the Thomases had a legal or equitable interest or estate in the leased lands the defendant O. H. Mohlman is liable in equity to the same extent and in the same manner as Clayborne Thomas. Defendant Mohlman acquired only such interest as the state land board could lawfully and honestly convey to him. In this connection it should be noted that appellant made no claim in the court below that he was improperly joined as a party defendant. His claim is that he was the owner of the lease of the salt beds and that the copartnership had no interest in such lease. It is also contended that the complaint is fatally defective because it fails to allege the value of the lease which the copartnership claims it held on the salt bed or the value of the lease given in lieu thereof. An allegation as to the value of either of such leases does not add or detract from the rights, if any, of the plaintiff to have the lease declared to be held in trust for the use and benefit of the copartnership. Nor does plaintiff's right, if any, to an accounting of the rents and profits derived from the lease depend on the value thereof.

Appellant earnestly contends that the court below was in error in finding that the state land board was without authority to cancel the lease standing in the name of defendant Clayborne Thomas to the exclusion of the rights of the copartnership; that the state land board was without authority to cancel the lease upon the ground that the royalties had not been paid is not open to doubt.

The statute under which the lease was drawn provides that:

"Any lessee of purchaser or his assignee, who is in default for non-payment of rental, principal, or interest due the State for a period of one month, shall be notified by the board by registered letter of such default, and if, within one month after service of such notice, such delinquent has not paid such rental, principal, or interest so delinquent, and has procured no extension of time, his lease or contract of sale shall be forfeited, and such forfeiture shall be noted on the records of the board; provided, that where, through good and reasonable cause, such purchaser or lessee has been unable to meet his payments when due, the board may, in its discretion, extend the time for making interest payments not to exceed one year." Laws Utah 1925, c. 31, § 5603, p. 65.

That provision has, since its enactment, continued to be the law of this state. Rev. St. Utah 1933, 86-1-47. The copartnership was the equitable if not the legal assignee of the lease standing in the name of the defendant Clayborne Thomas. The state land board was fully advised that such was the fact. It had, without objection, during all of the time the lease stood in the name of Clayborne Thomas, accepted payment of the rental and royalties of the leased land from either the plaintiff or the copartnership. Under such a state of facts the copartnership was an assignee of the lease within the meaning of the act of 1925, and as such entitled to notice and opportunity to be heard before its interests in the lease could lawfully be canceled. It will be observed that only 15 days elapsed between the date notice was mailed and the date that the lease was canceled at the request of the defendant Clayborne Thomas. It is established beyond controversy that Clayborne Thomas was without authority to cancel the lease. The copartnership agreement expressly prohibits him from doing that. Independent of such a provision in the copartnership agreement, Clayborne Thomas was without authority to relinquish the rights of the copartnership in the leased lands for the sole purpose of securing for himself employment at a salary of $75 per month.

Appellant complains because the trial court found that the lease standing in the name of Clayborne Thomas was canceled and a new lease executed to defendant O. H. Mohlman

"for the purpose and with the intention of terminating the interest of the partnership and of Sam Decorso in said leased property, and was not done as a part of the winding up or liquidating of the partnership assets, but was done for the purpose of placing the control of said lease and property rights held thereunder out of the partnership and to prevent the same from being applied to the partnership obligations and of preventing the plaintiff from obtaining the money which he had advanced to said co-partnership."

Appellant also complains of the further finding that:

"Defendant O. H. Mohlman intentionally and with intent to defraud and cheat the plaintiff and the co-partnership, induced defendant Clayborne Thomas to write to the State Land Board requesting cancellation of said lease so that he, the said defendant, O. H. Mohlman, could obtain the same in his own name and for his own personal gain."

As will be seen from the evidence heretofore summarized in this opinion, there is evidence to support both of those findings. Even though the defendant Mohlman was guilty of no bad faith, still he had full notice of the rights of the copartnership in the lease and in contemplation of law took the lease in his name subject to such rights. It is a general principle of the law of constructive trusts "that one who acquires land or other property by fraud, misrepresentation, imposition, or concealment, or under any other such circumstances as to render it inequitable for him to retain the property, is in equity to be regarded as a trustee ex maleficio thereof for a person who suffers by reason of the fraud or other wrong, and who is equitably entitled to the property, even though such beneficiary may never have had any legal estate therein." 65 C. J. 462-464. The foregoing doctrine is applied in the following cases: *Luse* v. *Rankin,* 57 Neb. 632, 78 N. W. 258; *Clay*

v. *Palmer*, 104 Neb. 476, 177 N. W. 840; *Martin* v. *Carlisle*, 46 Okl. 268, 148 P. 833, 6 A. L. R. 154. The principles of law announced in the foregoing cases are controlling here. It is suggested in the brief of counsel for appellants that plaintiff could not lawfully hold an interest in the lease because he is not a citizen of the United States. Our statute (Rev. St. 1933, 86-1-29) does provide that only citizens of the United States, or persons who have declared their intention of becoming such, may purchase state lands. There is no such restriction in the statute with respect to the leasing of state lands. It is also contended that the copartnership of the Thomases and plaintiff no longer exists because the copartnership agreement provides that it should continue for but one year, and because the bringing of the suit for dissolution terminated the partnership. Assuming, without deciding, that the copartnership is at an end, we are unable to perceive how that fact, if it be a fact, would aid the defendant Mohlman in this proceeding. In any event those who as creditors or otherwise have claims against the copartnership are entitled to its assets.

It is further urged by appellant that the state land board could not, without its consent, be sued. Such is the doctrine announced by this court in the case of *Wilkinson* v. *State*, 42 Utah 483, 134 P. 626. Our attention is also directed to the case of *Whitmore* v. *Candland*, 47 Utah 77, 151 P. 528, where it is held that the actions of the state land commissioners may not be reviewed for errors in judgment so long as they act in good faith, without fraud or collusion, or without or in excess of their powers or jurisdiction. We need not pause to discuss the law as announced in those cases. Suffice it to observe that the defense that the state land board may not be sued without its consent is for its benefit and protection, and such defense is not available to defendant Mohlman. When the commissioners of the state land board attempted to cancel the lease, because of the failure to pay royalties, without giving the statutory notice, their action in such respect is contrary to law and in

excess of their powers, and a nullity with respect to the interests of the copartnership. The court below was right in holding that the cancellation of the lease upon the land involved in this litigation, upon the request of Clayborne Thomas, did not cut off the interests of plaintiff and the copartnership in the leased salt beds.

As we understand appellant's position, he claims that the court erred in rendering judgment against him for $33.76, not because the judgment is excessive if he was properly required to render an accounting, but because he does not hold the lease in trust for the partnership, and therefore no judgment could properly be rendered against him in favor of the copartnership. Having decided that he holds the lease in trust for the copartnership, it follows that he must fail in his claim that the money judgment is erroneous. It is elementary that one who holds property in trust for another may be required to render an accounting of the rents and profits of the property so held. Appellant has no just cause to complain because costs were assessed against him and defendant Clayborne Thomas. They failed to prevail in the court below. This is a suit in equity, and, as such, the trial court has a discretion in the matter of assessing costs. Such discretion was not abused. Rev. St. Utah, 1933, 104-44-4.

Appellant does not seriously contend that the assignments of error relating to the admission of evidence are meritorious. All that he says in support of such assignments is: "While these assignments in themselves, if there are no other errors, might not be prejudicial error, yet they show the trend of the lower court's mind which we thought was decidedly in favor of plaintiff."

There is no merit to such assignments. Appellant is not entitled to a reversal of the decree and judgment appealed from.

Respondent has assigned cross-errors. He complains because the court below in the account rendered by appellant allowed him to retain $75 per month from the rents and

profits received by him from the leased lands to compensate him for services rendered in harvesting and marketing the salt. Respondent earnestly contends that in light of the fact that appellant wrongfully acquired possession of the leased lands he should not be allowed any compensation. Respondent also complains because the court below, at one stage of the proceeding, appointed a receiver and directed defendant Mohlman to deliver possession of the leased premises to such receiver, and at a later time made an order permitting Mohlman, upon furnishing a bond in the sum of $3,000, to remain in possession of the lands in controversy. In the absence of a cross-appeal, respondent is not entitled to review the matters complained of. Cross-assignments of error without a cross-appeal may serve the purpose of upholding a judgment which otherwise would be vulnerable to attack; but cross-assignments of error, even if well taken, do not authorize this court to grant relief other than or in addition to that granted in the judgment appealed from. *Fowers* v. *Lawson*, 56 Utah 420, 191 P. 227. Respondent should have cross-appealed if he desired to obtain a different judgment from that rendered in the court below.

The judgment is affirmed. In light of the fact that appellant failed on his appeal, and respondent, although devoting considerable space in his brief to arguing his cross-assignments, has failed to prevail thereon, no costs will be allowed either party on this appeal.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.