Merrimack,  }
Dec. 4, 1928. }

### R. F. ROBINSON CO. *v.* WILLIAM J. DREW & *a.*

*Benjamin W. Couch, Winthrop Wadleigh* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Foster & Lake* (*Mr. Lake* orally), for the defendant Drew.

*Frank Goldman* (of Massachusetts) and *David F. Dudley* (*Mr. Goldman* orally), for the defendant Maurice Brams.

ALLEN, J. The defendant Drew appears to own the property, partly at least, as a trustee under a will. No question is made, however, of his authority to sell and convey, and it is taken for granted that his fiduciary ownership has no bearing on the plaintiff's rights. Also, the clause in the lease around which the controversy centers expresses no time for the exercise of such option as it gives. The lease is for a term during which the exercise of the option is sought, and it appears to be conceded that such exercise is impliedly limited in time to the term of the lease.

While the defence to the enforcement of the option is stated to be upon the ground of its subjection to the statute of frauds, the real issue is whether the option clause contains all the essential elements of a contract. So far as the parties made a contract, the lease set forth all its terms. Nothing they agreed upon was omitted. And the case is not one where new or different terms are sought to be made a part of the contract, but is one where the sufficiency of the terms to constitute a contract is under inquiry. Whether there is a contract at all is to be determined, and not whether the contract is unenforceable because of the statute. If there were no law requiring contracts about real estate to be in writing, the question presented would be the same. The basic claim is that the parties did not reach an agreement which is capable of enforcement, and that it amounted to nothing more than an agreement to make a future agreement whose terms could only be settled by it. All that the statute of frauds contemplates is that certain contracts shall be in writing. Its purpose is not to alter or affect the character and elements of contracts, but only to provide for methods and formalities of proving them.

A bargain or option of sale, either of real or personal property, and either oral or written, must contain for one of its terms some statement of the price. Otherwise it is an uncompleted negotiation without provision for its completion, and fails of effect because there is no contract. The parties have reached no agreement capable of performance. Such a situation is illustrated by the case of *Conos* v. *Sullivan*, 250 Mass. 376, in which a lease was subject to renewal at a rental to be based on any increase in the value of the property during the original term. As no way was pointed out in the lease for determining the increase, one of the "vital factors" of a contract was missing, and the renewal clause therefore lacked validity.

But when it is said that a necessary term of a contract of sale is a statement of the price, that does not mean that the contract itself must fix the price or that the price may not be implied. If the con-

tract prescribes a method which will necessarily result in the determination of the price, that is enough. A sale of land at a stated price per acre, the acreage to be determined by a survey, is the equivalent of a sale at a stated price for the whole. If the price as one of the terms of the contract must be stated in writing, such a contract when in writing may be enforced. Although the price is not shown, the terms of the writing show a price provided for and determinable. While parol evidence may not show the intent of the parties if the contract does not show it, such evidence may be used to show to what things and matters the contract refers. Also, if the implications show it, there may be a contract although it contains no express reference to the price at all. An accepted order for goods having a market price implies a sale at such price if nothing is said about the price. But by the general weight of authority, if the sale is at a price to be fixed by further negotiations, the uncertainty that the price may be agreed upon leaves the sale incomplete and no more than a preliminary negotiation without obligation, and a declaration of purpose to perform the contract if one is made. Such agreements, being merely arrangements to enter into negotiations, do not guarantee the success of the negotiations. Even in these cases, however, it is sometimes held that there is a sale on the theory that the real agreement is to sell at a reasonable price, to be determined by the courts if the parties fail to agree on one. *Slade* v. *Lexington*, 141 Ky 214; *Young* v. *Nelson*, 121 Wash. 285. See also *Joy* v. *St. Louis*, 138 U. S. 1, 43.

Whether the owner or others set the price is not important. All that is required is that the contract shall say who shall do it or how it shall be done. Neither the common law nor the statute of frauds makes such an arrangement void or unenforceable. Under an option to buy for the value of the property at the time of purchase as fixed by third parties, the method of determining the price is definite, and it is no less so when the price is to be settled by the owner's decision.

Nor is it material that the option is conditional if the condition must be settled one way or the other. An agreement to sell provided something happens or is done is binding and becomes enforceable if the condition is fulfilled. Neither common nor statute law affects the obligation if the optionor reserves the right not to sell. If he says that he may decide to sell and that if he does, he will give the optionee the right to buy at the price he sets, the optionee, having given consideration, has acquired a conditional right to buy, and the fulfillment of the conditions makes the right capable of enforcement.

With these propositions there is general accordance of authority.

Study of the cases shows that conflict arises in construing the particular language used. And since "the construction of a written contract presents a question of intention, which is a question of fact" (*Kendall* v. *Green*, 67 N. H. 557, 561), although passed upon by the court rather than the jury, it is not to be expected that the same or similar language will receive uniformity of construction, and decisions on such questions cannot receive the weight generally given precedents.

In construing the clause whose meaning and effect is here in issue, such meaning is ascertained when the usual rule of resolving doubts in favor of a valid and effective meaning rather than of one that is meaningless and futile is observed. Without resort to the *contra proferentem* rule, the general principle that "the inconvenience, hardship, or absurdity which one construction would lead to is often strong evidence in favor of another or different construction involving no objections of that character, because men in general do not enter freely into contracts which are absurd or frivolous, . . ." (*Kendall* v. *Green*, 67 N. H. 557, 563), guides to the conclusion of what intention the clause expressed.

The fair and reasonable meaning of the clause is that if the lessor should decide to sell during the term, he would give the lessee the first chance to buy at the price he asked. Decision to sell meant decision on the price to be asked. Any other construction would make the clause ineffective, and since the parties intended an effective meaning, one that is ineffective is not to be preferred.

It may not be maintained that this construction is contrary to the lessor's intention because it results in some restriction of his freedom of action in making a sale. It is true that a sale at auction, the acceptance of an offer not first submitted to the lessee, and an exchange of the property for other property, is barred, but any option creates such bars and limits the owner's right of sale to others. While the option is in force the owner's hands are tied to its extent, and for its term the optionor has made an offer which may not be withdrawn. This is its essential character.

The defendants argue that the option clause was not intended to be binding but is merely a suggestion that if the lessor should sell, the lessee would like to negotiate to be the purchaser. In support of the argument they refer to a clause in the lease immediately preceding the option clause for a sale and providing that the lease might be renewed at a rental to be agreed upon. The argument is faulty in its disregard of the principle both of law and common sense that a

contract is intended to be enforceable and that its provisions are all intended to be effective if possible. Conceding that the parties must have understood that the lease could not be renewed unless they agreed upon a renewal rental, it does not follow that they understood the clause relating to a sale was equally ineffective. If in meeting legal essentials and considered by itself the clause has binding force, a purpose that it should be legally ineffective is not shown by another clause which may be incapable of enforcement.

And the contention that the proper meaning of a sale as the word is used in the clause is its literal meaning of a concluded sale not only gives an ineffective meaning but if adopted would lead to the result that the parties understood the option meant nothing even by way of goodwill. A concluded sale to, or an accepted offer from, a third party as a test of price to the lessee would thereby necessarily make the lessee's acceptance of the price of no avail, and it is not to be assumed that the parties by the clause contemplated an arrangement which patently and necessarily defeated its purpose and gave at most a false hope.

In *Fogg* v. *Price*, 145 Mass. 513, a lease provided: "if the premises are for sale at any time, the lessee shall have the refusal of them." The clause was construed as "an agreement to sell if the parties can agree, but not otherwise," and a sale to another party was held not to be contemplated as a method to determine the price. The construction fails to give what seems the more natural meaning of the language used in showing what the parties had in mind. It was intended to give the lessee an option to buy if the premises were for sale, and to have the clause amount to more than futility, it meant that a purpose to sell included an asking price. If the clause had stated that the lessee should have the refusal of the property at such price as the lessor asked, it would have expressed what it would seem was implied. While it is true that the price in a sale to another party was not contemplated as the price at which the lessee might buy, it is also true that an option to be effective barred such a sale while the option was in force. If the price was otherwise determinable, it is of no bearing that the price might not be fixed in that way.

In the same way, in the case of *Wolf* v. *Lodge*, 159 Ia. 162, in which a similar clause was under consideration, it is said that the lessor "did not undertake to name a price in putting it on the market, nor did he agree that opportunity to buy should be at a specified sum or one in some manner to be ascertained." So far as cases of construction in other jurisdictions are authority here, these and other cases

adopting a like construction of such language are not to be followed, in view of the narrowed scope given the language, with the result of its coming to nothing, when an effective meaning appears more reasonably to have been within the contemplation of the parties.

The lessor's offer at a price the lessee declined to pay did not discharge him from obligation to offer when he decided to sell at a lower price. The lessee's "preference as a purchaser" continued during the term unless the property was sold at a price the lessee would not pay. Decision to sell at the reduced price was within the tenor and scope of the option, and the lessee's right to buy thereat was given as much as the right to buy at the higher price. The option did not mean that its obligation should be discharged upon the rejection of a single offer. A contrary view, if it would not be promotive of bad faith, would largely destroy the evident purpose the option sought to accomplish.

The cases of *Hill* v. *Prior*, 79 N. H. 188, and *Gosselin* v. *Thurston*, 81 N. H. 65, are not in point. In the former case a clause in a lease giving the lessee "the first right" to a renewal was held to show no purpose of the lessor to continue to lease the property, and only to give the lessee a preferential right if it were further leased. In the latter case the agreement was to give the plaintiffs the first chance to buy the property. When asked they declined to make an offer of the price they would pay, merely saying they would give a reasonable price, and it was held that the defendant, having kept his agreement, was at liberty to sell to others. Aside from the fact that the refusal to make an offer when requested may well have been found under the circumstances to be a waiver of the option, giving the first chance to buy and giving a preferred right to buy are not necessarily one and the same. The former may be initial and limited, while the latter is continuous. Difference of language may well show difference of purpose and call for difference of construction.

The plaintiff's equitable right to a conveyance of the property is to be determined by the trial court. *Manchester Dairy System, Inc.* v. *Hayward*, 82 N. H. 193, 206, 207, and cases cited. But as it appears that the right was here denied for the reasons on which the demurrer was based, the dismissal of the bill was erroneous.

*Defendants' exception overruled: plaintiff's exception sustained.*

All concurred.