Stephen D. BARLING and Audrey K. Barling, Appellants,

v.

Harold H. HORN and Olive A. Horn; and S. John Smith and Marion Smith; and City Bond & Mortgage Company, a Corporation, Respondents.

No. 45381.

Supreme Court of Missouri.

Division No. 1.

Dec. 10, 1956.

Henry M. Shughart, Harry P. Thomson, Jr., Kansas City, Shughart & Thomson, Kansas City, of counsel, for appellants.

William W. Cochrane, Jr., Kansas City, Gordon & Cochrane, Kansas City, of counsel, for respondents S. John Smith and Marion Smith.

VAN OSDOL, Commissioner.

This is an action for specific performance of a clause in a lease whereby the lessees, plaintiffs, in the event the lessors desired to sell the leased premises prior to the expiration of the term, were to have the first opportunity to purchase the premises. The trial court denied specific performance on the ground that the lease stated no price or method for determining the price at which plaintiffs were to have the right to purchase, and, consequently, "the alleged option is indefinite and uncertain and unenforceable in equity." Plaintiffs have appealed.

April 27, 1953, defendants, Harold H. Horn and Olive A. Horn, were the owners of a described tract of land situate on Wornall Road in Kansas City, and on that day they as lessors entered into a written contract leasing the land and a store building (to be built thereon) to plaintiffs, Stephen D. Barling and Audrey K. Barling, lessees, which contract of lease stipulated a term of five years at a rental of $225 per month. As indicated, the lessors had undertaken to construct a building on the described tract; and the lessees, plaintiffs, entered into the possession of the property, consisting of the described tract and the new store building erected thereon, on December 7, 1953, and there conducted their business as partners in sales of floor coverings.

Under those paragraphs of the contract of lease entitled "Agreements of Lessors," the lessors agreed to "furnish the Lessees, subject to the requirements heretofore set forth, the option of renewal of this lease on the same terms and conditions for a succeeding term of five years" on the following condition (among others),

"d. The Lessors have not notified the Lessees in writing of their desire to sell the building and the premises prior to the expiration of this term, in such event the Lessees shall have the first opportunity to purchase the premises."

September 1, 1954, plaintiffs Barling learned that defendants Horn were thinking of selling the property, and on September 9th defendant, Harold H. Horn, verbally informed plaintiff, Stephen D. Barling, that the property was going to be sold; and on the same day, September 9th, defendants Horn wrote plaintiffs that the property was for sale and that plaintiffs were by the letter notified thereof, and given the first opportunity to purchase. The letter further advised plaintiffs that the "price on the above property is $30,000. The present loan is $11,134.27, which is held by the City Bond and Mortgage Company. This property will immediately be offered for sale to others if you are not interested."

The plaintiffs Barling did not accept the $30,000 offer; and an advertisement offering the property for sale appeared in the Kansas City Star of Sunday, September 12, 1954. That same afternoon or evening defendant, S. John Smith, met with defendant, Harold H. Horn, and, after inspecting the premises, offered to buy the property at a price of $26,000.

On Friday, September 17th, defendant Harold H. Horn came to the Barling store and during the ensuing interview Barling offered the Horns $26,134.27 for the property, the offer being $15,000 cash and the assumption of the mortgage in the amount of $11,134.27; but Horn wanted Barling to waive any refund of the sum of $675, which the contract of lease had required the lessees, the Barlings, to advance as rent for the last three months of the five-year term. Barling did not agree to waive the refund, and the parties discussed an alternative whereby Barling might install some floor coverings at cost at the Horn home as a part of the purchase price. Horn asked Barling if he would sign a contract of sale on that basis; Barling stated that he would; but Horn left the Barling store without further comment.

Thereafter, the Barlings were negotiating for a loan to be secured on the Barling home and the store building and premises for an amount which would enable them to consummate a purchase of the demised property.

Near noon on Friday, September 24th, plaintiff, Stephen D. Barling, called the Horn home by telephone and told defendant, Olive A. Horn, wife of defendant Harold H. Horn, that he had "the money for the property." He was informed the property had been sold. A warranty deed from defendants Horn to defendants Smith was in fact executed and delivered in the afternoon of that day, pursuant to a contract of purchase and sale entered into between defendants Horn and defendants Smith on September 18th. By the contract of sale and the warranty deed from the

Horns to the Smiths, the property was to be and was conveyed for the sum of $26,000, less the unpaid balance of the secured note held by the City Bond & Mortgage Company of $11,288.55 and less the additional amount of $675, being the deposit made, as stated, by plaintiffs-lessees as rent for the last three months of the term of the lease. It is clear from the evidence that defendants Smith had actual as well as constructive notice of the terms and conditions of the lease, including the clause "d" quoted supra, prior to the execution of the contract of purchase and sale of September 18th and the execution and delivery of the warranty deed of September 24th. Counsel for defendants, the Horns and the Smiths, waived any issue as to plaintiffs' ability to buy the property on the terms and conditions as those of the sale undertaken by defendants Horn to defendants Smith; and the trial court correctly found the fact that, at the time of the execution of the contract of sale between the Horns and the Smiths and at the time of the consummation of the sale and at the time of trial, "the plaintiffs were ready, willing and able to purchase the property in issue upon the same terms and conditions as of the sale" by defendants Horn to defendants Smith.

Neither of the defendants Horn ever in any way communicated any offer to plaintiffs or afforded plaintiffs an opportunity to buy the property at the price and terms of sale by defendants Horn to defendants Smith. The trial court was justified in finding and specifically found that "the defendants and each of them failed to give the plaintiffs the opportunity to purchase the premises and real estate in question upon the same terms and conditions as those upon which the sale of said real estate and premises was made by Harold H. Horn and Olive A. Horn to the defendants, S. John Smith and Marion Smith."

Directing our attention to the clause "d" of the contract of lease giving plaintiffs the first opportunity to purchase the premises, we see that the clause in its setting

in the contract of lease does not even purport to be a completed bilateral contract for the sale of the described property. Nevertheless, defendants-respondents Smith would have us treat with the clause as if it were intended to constitute a contract of sale and apply the universal rule that a contract to be specifically enforceable must be complete in its essential and material terms and capable of being enforced without adding to its terms.

■■ It is true that the stipulation of a price, or a method of determining it, is essential to the enforceability of a contract of sale. The contract should be sufficiently definite and certain in its essential terms to enable a court to decree specific performance. A court of equity will not make a contract and then decree its performance. Rayburn v. Atkinson, Mo.Sup., 206 S.W.2d 512; Baldwin v. Corcoran, 320 Mo. 813, 7 S.W.2d 967. So if the clause "d" were considered as if it were intended to be, in itself, a completed contract of purchase and sale, it was incomplete, indefinite and uncertain, and consequently unenforceable.

But, as we have said, the quoted clause of the lease does not even purport to be a contract of purchase and sale of the property, although it clearly contemplated that defendants Horn might decide to sell the property. In such event, plaintiffs were to have "the first opportunity to purchase the premises." The clause did not provide that plaintiffs should have the first right or privilege of purchase at a stated price and on stated terms, or at a price and on the terms equal to another's bona fide offer; neither did it stipulate that plaintiffs were to have the right to purchase at the price and on the terms as lessors offered to another. See the cases in the Annotations, 117 A.L.R. 1095 and 136 A.L.R. 138. But any sale to be consummated by defendants Horn necessarily would presuppose an agreement or a stipulation with some purchaser as to price and terms at and on which the Horns were willing to sell. So we immediately say that, having decided to

sell and before they sold to another or others, the Horns should have offered the property to plaintiffs at the price and on the terms the Horns were willing to sell, because they had agreed that plaintiffs were to have the first opportunity to buy.

In Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320, 321, a lease contained a provision—" 'That in the event the land is to be sold, the tenant will be given first preference and allowed to purchase said land if the parties can agree on the price.' " The reviewing Supreme Court of Michigan spoke of the provision as a "so-called 'preference' or 'first refusal' " option clause, which leaves price to the future agreement of the parties. With regard to the contention or objection that such a clause is void under the Statute of Frauds and unenforceable because of vagueness, the reviewing court said, "* * * such objection is met when the optionor fixes a price at which he is willing to sell. The option, if adequate in other respects, thereupon becomes a definite offer, which, when accepted by the optionee, ripens into a mutually binding contract, specifically enforceable."

■ The clause "d" did not amount to a contract of purchase and sale; and the clause was not an option to purchase in a true sense; although some courts speak of similar clauses as "options." But the clause did amount to a contract or agreement of another kind. It was an agreement that if defendants Horn decided to sell, plaintiffs were to have the first right to buy,—the first opportunity to purchase—to the exclusion of a purchase by another—a right of pre-emption, one might say. The agreement, so considered, was supported by a consideration—the lessees' covenants in the contract of lease. The right was peculiarly a valuable one to these plaintiffs because, deprived of it, plaintiffs, upon a sale to another, lost their opportunity to purchase and also lost their option privilege to renew the lease for the further term of five years on the same terms and conditions as those of the current five-year term.

This court has recognized a distinction between an option to purchase and a right of pre-emption in Beets v. Tyler, Mo.Sup., 290 S.W.2d 76, 81, quoting from Vol. VI, American Law of Property, § 26.64, p. 507, as follows, "'A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone.'" The distinction is also recognized in Kershner v. Hurlburt, Mo.Sup., 277 S.W.2d 619.

■ Under the quoted clause "d" the lessors, defendants Horn, were not obliged to sell; but it seems clear that by the clause it was intended that if the lessors decided to sell they were obligated, before they consummated a sale to another, to afford plaintiffs the first opportunity to purchase at the price and upon the terms lessors, the Horns, decided they were willing to sell. Now the contract of purchase and sale of September 18th between the lessors Horn and the defendants Smith and the subsequent conveyance of September 24th with completeness, definiteness and certainty evidence the price and the terms on which lessors Horn were willing to sell. And, before the defendants Horn undertook to consummate the sale to the defendants Smith, the Horns did not offer to sell the property to plaintiffs at such price and on such terms, and so the Horns failed to fulfill their obligation to afford plaintiffs the first opportunity to buy. Inasmuch as defendants Horn failed to fulfill their obligation under their agreement with plaintiffs, of which agreement, the evidence

shows, defendants Smith had actual (as well as constructive) notice, we shall treat with the case as if defendants Horn had done what they were obligated to do and should have done; that is, we, sitting as a court of equity, shall determine the rights of the parties as if defendants Horn had offered the property to plaintiffs at the price and on the terms defendants Horn were willing to sell. And, since the evidence supports the inference and our conclusion that plaintiffs would have accepted the offer which defendants Horn were obligated to tender, and which offer, if it had been made and accepted, would have ripened into a completed contract of purchase and sale, definite and certain in its essential terms and therefore enforceable, we shall reverse the trial court's judgment and decree and remand the cause with directions.

The result we have here reached apparently is not supported by all of the decisions of the courts of other jurisdictions, although in no case we have examined has there been interpreted a clause identical in language with the clause "d." See Fogg v. Price, 1888, 145 Mass. 513, 14 N.E. 741; Folsom v. Harr, 1905, 218 Ill. 369, 75 N.E. 987; Wolf v. Lodge, 1913, 159 Iowa 162, 140 N.W. 429. But we are of the opinion that, the intent and purpose of the clause "d" being correctly analyzed, our decision on the facts and in the circumstances of this case is supported by soundly reasoned decisions. See again Brenner v. Duncan, 1947, supra, 318 Mich. 1, 27 N.W.2d 320. See also Parker v. Murphy, 1929, 152 Va. 173, 146 S.E. 254; R. F. Robinson Co. v. Drew, 1928, 83 N.H. 459, 144 A. 67; Jurgensen v. Morris, 1920, 194 App.Div. 92, 185 N.Y.S. 386; Garelik v. Rennard, 1921, 116 Misc. 352, 190 N.Y.S. 371.

■ We believe it could not be rightly urged that the written offer of September 9th to sell the property to plaintiffs for $30,000, which offer was not accepted by plaintiffs, discharged lessors-defendants

Horn from their agreement to afford lessees-plaintiffs the first opportunity to purchase. R. F. Robinson Co. v. Drew, supra [83 N.H. 459, 144 A. 68], correctly treated with such a contention, we think. In that case the lease contained a clause that, in case of a sale by the lessor, " 'the lessee shall have the preference as a purchaser.' " The lessor decided to sell and offered the property to plaintiff-lessee at a price plaintiff declined to pay. Later the lessor sold it at a lower price without first giving plaintiff an opportunity to buy at the lower price. Said the reviewing Supreme Court of New Hampshire, "The lessor's offer at a price the lessee declined to pay did not discharge him from obligation to offer when he decided to sell at a lower price. The lessee's 'preference as a purchaser' continued during the term unless the property was sold at a price the lessee would not pay. Decision to sell at the reduced price was within the tenor and scope of the option, and the lessee's right to buy thereat was given as much as the right to buy at the higher price. The option did not mean that its obligation should be discharged upon the rejection of a single offer. A contrary view, if it would not be promotive of bad faith, would largely destroy the evident purpose the option sought to accomplish."

The trial court's judgment and decree should be reversed and the cause remanded with directions to enter a judgment and decree ordering and directing defendants Smith to execute and deliver a warranty deed conveying the described real property to plaintiffs upon payment (within thirty days from the rendition of judgment and decree upon this remand) by plaintiffs to defendants Smith of the amount paid by those defendants to defendants Harold H. and Olive A. Horn with interest on such amount at the rate of six per cent per annum from the time of such payment and upon the further payment by plaintiffs to defendants Smith of such amounts as defendants Smith may have paid on the principal and as interest on the secured note of the mortgagee, City Bond & Mortgage Company, and such amounts as defendants Smith may have expended in the maintenance and repair of the property, and for insurance and taxes. Against the aggregate of such amounts to be paid by plaintiffs to defendants Smith there shall be set off the amount of the rent which plaintiffs may have paid to defendants Smith since the date, September 24, 1954, of the warranty deed from the defendants Horn to defendants Smith. And the lien securing the note of the City Bond & Mortgage Company is to be preserved as security for whatever balance of principal and interest may remain unpaid on the note at the rendition of the judgment and decree upon remand.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.