**GULF OIL CORPORATION, Defendant-Appellant,**

v.

**AMERICAN LOUISIANA PIPE LINE COMPANY, Plaintiff-Appellee.**

**No. 14140.**

United States Court of Appeals
Sixth Circuit.

Sept. 15, 1960.

Jesse P. Luton, Jr., Houston, Tex., Laurence M. Sprague, Fischer, Sprague, Franklin & Ford, Detroit, Mich., Charles E. McGee, Washington, D. C., on brief, for appellant.

Charles V. Shannon, Washington, D. C., A. D. Ruegsegger, Detroit, Mich., and Arthur R. Seder, Jr., Chicago, Ill., on brief; Dyer, Meek, Ruegsegger & Bullard, Detroit, Mich., May, Shannon & Morley, Washington, D. C., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel for appellee.

Before MILLER and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.

WEICK, Circuit Judge.

This case involves a contract for the sale of natural gas by Gulf Oil Corporation to the American Louisiana Pipe Line Co. Gulf cancelled the contract. It asserted the right to do so by virtue of certain provisions thereof which will be later discussed. American Louisiana disputed Gulf's right to cancel the contract. It brought this action in the District Court against Gulf seeking a declaratory judgment, 28 U.S.C. § 2201, that Gulf's cancellation was unlawful.

The case was tried by the District Judge without a jury. He rendered judgment for American Louisiana declaring that the cancellation of the contract was unlawful. American Louisiana

Pipe Line Co. v. Gulf Oil Corp., D.C.E.D. Mich.1959, 180 F.Supp. 155. Gulf has appealed from that decision.

Chief Judge Levin, who tried the case, wrote an opinion which was complete and well-reasoned. His thorough analysis of the problems involved, and this Court's agreement with his conclusions, renders unnecessary a detailed restatement of the case. Accordingly, we shall recite only such facts as are essential to an understanding of the issues of this appeal.

Gulf owned a large deposit of natural gas in Louisiana, known as the Krotz Springs Field. American Louisiana owns and operates an interstate natural gas pipe line extending from southern Louisiana to Detroit, Michigan. After several conferences, and as the result of considerable negotiation, the parties consummated a contract for the sale of the Krotz Springs gas to American Louisiana.

American Louisiana was limited by an order of the Federal Power Commission as to the amount of natural gas which it was legally allowed to transmit, this amount being known as certificated capacity. In order to take and transport the gas in the amounts called for in the contract, American Louisiana had to apply to the Federal Power Commission for an increase in its certificated capacity. It was also necessary for American Louisiana to secure the Federal Power Commission's approval of the physical changes in its transmission system necessitated by the increased load proposed to be carried.

It was likewise necessary that Gulf obtain the Federal Power Commission's approval of the proposed sale. This regulation of producers by the Federal Power Commission was the result of the decision of the Supreme Court in Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. Gulf had anticipated that it would become exempt from regulation by the Federal Power Commission upon the passage of the Harris Bill (H.R. 6645). The Harris Bill, however, was vetoed by the President and it remained necessary for Gulf to obtain the Federal Power Commission's approval of this interstate sale.

Gulf and American Louisiana filed their respective applications for Certificates of Public Convenience and Necessity on May 14, 1956.

■ Article V, Sec. 5 of the contract conditioned the obligations of Gulf upon American Louisiana's obtaining from the Federal Power Commission

"Such authority as may be necessary to enable it to expand the certificated capacity of its line to accept and transport the quantities of gas to be purchased. * * * "

Article V, Sec. 6 gave Gulf the right to cancel the contract if American Louisiana

"failed to obtain requisite authority within six months after making application therefor."

On August 8, 1956 American Louisiana was granted a temporary Certificate of Public Convenience and Necessity under Sec. 717f(c) of the Natural Gas Act. 15 U.S.C.A. § 717f(c). This increased American Louisiana's certificated purchase capacity to a degree which would enable it to fulfill its contract requirements and authorized the construction of the additional facilities. By November 14, 1956 American Louisiana had not been granted a permanent Certificate of Public Convenience and Necessity and Gulf thereupon cancelled the contract. It attempted to withdraw its application to the Federal Power Commission for a Certificate of Public Convenience and Necessity. Action on the attempted withdrawal has been deferred by the Federal Power Commission pending judicial determination of the rights of the parties.

This factual background frames the basic issue whether the granting of the temporary certificate to American Louisiana was "requisite authority" to transport the gas within the meaning of Section 6 of the contract, so as to preclude Gulf from cancelling.

The District Judge heard the testimony of the witnesses concerning the

negotiations and surrounding facts and circumstances leading to the consummation of the contract. He had before him the completed document as well as the preliminary drafts and revisions.

It is noteworthy that Section 3 of the contract required Gulf to file with the Federal Power Commission "an application for a Certificate of Public Convenience and Necessity." Section 5 of the contract which related to American Louisiana is materially different. American Louisiana was required to file "an application for such authority as may be necessary to enable it to expand the certificated capacity of its line. * * *" Gulf would have the Court construe the language of Sections 3 and 5 of the contract to require the same thing, namely, a permanent Certificate of Public Convenience and Necessity. The term Certificate of Public Convenience and Necessity has a well-known meaning. It is used in the Natural Gas Act. 15 U.S.C.A. § 717 et seq. We cannot believe that the difference in language in the two sections of the contract was inadvertent, particularly in view of the extended negotiations of the parties who were represented by lawyers presumably skilled in this field of the law, and observed great care in drafting and redrafting various provisions of the contract.

At the time this contract was entered into, the Federal Power Commission had never refused a permanent Certificate of Public Convenience and Necessity once it had issued a temporary certificate, and over 600 billion dollars of construction had been carried forward under temporary certificates. The District Judge concluded, on all the evidence, that a temporary certificate was "requisite authority" within the sense of the contract and that American Louisiana was not bound to obtain a permanent certificate within six months in order to satisfy the obligations of Article V, Sec. 5. We are in agreement with that conclusion.

The District Judge further held that even if a permanent certificate had been contemplated by the parties, Gulf was still precluded from cancelling the contract. He found that Gulf, by its own conduct, was instrumental in delaying and preventing the issuance of the permanent certificate by the Federal Power Commission prior to the expiration of the six month period.

■ Where liability under a contract depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it. Suter v. Farmers Fertilizer Co., 100 Ohio St. 403, 411, 126 N.E. 304; Atlas Trading Corp. v. S. H. Grossman, Inc., 3 Cir., 169 F.2d 240; Corbin on Contracts § 1266 (1951 ed.).

The evidence disclosed that when the contract was negotiated, Gulf proposed a clause permitting cancellation of the contract unless the Federal Power Commission, when it issued a Certificate of Public Convenience and Necessity to Gulf, made a finding that the initial sale price of the gas was "just, fair and reasonable." American Louisiana refused to accept this clause. They took the position that to inject a rate determination into certificate proceedings before the Federal Power Commission might prejudice or at least delay issuance of the certificate for an inordinate length of time. Gulf recognized the validity of this contention and agreed to delete the clause from the contract.

■ Notwithstanding its agreement in this respect, when Gulf filed its certificate application with the Federal Power Commission it included therein the very thing which it had agreed to and did delete from the contract, which was as follows:

"Applicant is able to make the sales referred to herein and is willing to make such sales provided the Federal Power Commission finds in its order or opinion issuing a certificate to applicant that the initial price set forth in the aforementioned gas sales contract dated December 7, 1955 is just, fair and reasonable."

The District Judge was of the opinion that Gulf, in embodying this provision in its application, knew, or should have known, that it was likely to and did in fact delay the issuance of American Louisiana's permanent certificate beyond the six months required by the contract and thus enable Gulf to cancel, if it so desired. The applications for certificate by American Louisiana and Gulf were being processed jointly and delay on one would necessarily delay the other. There is substantial evidence in the record supporting these findings and conclusions. In our judgment, they are not clearly erroneous and we cannot disturb them. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.; Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; International Boxing Club v. United States, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270; United States v. National Association of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007; United States v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. Certainly Gulf may not rely on the delay which it brought about by its own conduct to justify its cancellation of the contract. It was obligated to do nothing which would hinder, delay or prevent the granting of its certificate within the time provided by the contract. Furthermore, in agreeing in the negotiations to delete the contract provision objected to by American Louisiana, Gulf was precluded from reviving it later by a similar provision in its certificate application.

Gulf has raised other questions. We find them to be lacking in substance, and unwarranted of extended discussion.

Gulf initially challenged the Court's jurisdiction and reasserts here that the District Court lacked jurisdiction over this action. There was no question that personal service of summons was regularly had on Gulf in the District Court. Gulf's theory is that the action is a local one and could only have been brought in the District Court having jurisdiction over St. Landry Parish, Louisiana.

This contention is seemingly predicated on LSA–R.S. Art. 9 § 1105, which classified contracts relating to oil rights as "real rights and incorporeal immovable property." In our judgment, this statute has no application. The present action was not one in rem, but was to declare that the action of a party, in cancelling a contract, was unlawful. The order of the Court would operate against the party. This action, therefore, was transitory and not local in nature. The District Court held that it had jurisdiction. American Louisiana Pipe Line Co. v. Gulf Oil Corp., D.C.E.D.Mich.1959, 158 F.Supp. 13. We agree with its decision.

The judgment of the District Court is affirmed.