**WEBER MEADOW–VIEW CORPORA-TION, Plaintiff and Appellant,**

v.

**Florence S. WILDE and the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, a corporation sole, Defendants and Respondents.**

**No. 15183.**

Supreme Court of Utah.

Feb. 16, 1978.

Scott W. Cameron, Backman, Clark & Marsh, Robert L. Backman, Backman, Clark & Marsh, Salt Lake City, for plaintiff and appellant.

Randon W. Wilson, Jones, Waldo, Holbrook & McDonough, Frederick P. McBrier, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff Weber Meadow-View Corporation sued to enforce a "first right of refusal" to buy a tract of land in Summit County from the defendant, Florence Wilde. Upon the basis of the submissions and stipulated facts, it appears that defendant Church made an offer of $200,000, which was to be paid in part by the conveyance of a particular home in the town of Oakley, stated to be worth $48,000, and the balance in cash. On September 10, 1976, Mrs. Wilde submitted that offer to plaintiff Weber Meadow-View in order that it could meet it and thereby exercise its first right of refusal, if it so desired. Upon being advised of those terms, plaintiff on September 17, 1976 offered: $200,000 to be paid: $1,000 deposit, $199,000 on delivery of deed, which would include any piece of real property selected by Mrs. Wilde, with a value of up to $50,000. Defendant Florence Wilde did not consider plaintiff's offer acceptable, but instead chose to accept the offer of the Church including the home she desired.

Upon the basis of the foregoing stipulated facts, the parties agreed to submit the controversy to the trial court on these two issues of law:

1. May Mrs. Florence S. Wilde, as promissor under a recorded First Right of Refusal, accept an offer from a third party, Salt Lake Monument Park Stake, which includes the trade of a unique and specific piece of real property, and thereby make it impossible for the promisee, Weber Meadow-View Corporation, to exercise the First Right of Refusal?

2. Did the terms of Weber Meadow-View Corporation's Earnest Money Receipt and Offer to Purchase sufficiently comport with the terms offered by Salt Lake Monument Park Stake so that, upon Weber Meadow-View Corporation's tender of their Earnest Money Receipt and Offer to Purchase, a binding contract to sell the Real Property arose between Florence Wilde and Weber Meadow-View Corporation?

The trial court ruled in favor of defendants and plaintiff appealed.

Plaintiff argues, not entirely without reason, that in a situation of this kind, an optionor (such as Mrs. Wilde) could make it impossible for the optionee (plaintiff) to perform by demanding one particular finger ring, an old hat, or any other unique item which the optionee could not obtain, and thus defeat the optionee's right.

■ There is no doubt about the correctness of plaintiff's contention that one who enters into a contract must cooperate in good faith to carry out the intention the parties had in mind when it was made; and that he should not be permitted to engage in any subterfuge or devious means to prevent the other party from performing, and then use that as an excuse for failing to keep his own commitment.[1] The significant fact here is that the plaintiff makes no claim that there was any such subterfuge or collusion. In response to the court's question, its counsel expressly stated that it did not claim any collusion or bad faith, which it will be noted, is in conformity with the omission of any such contention in the stipulated facts above recited.

■ As the owner of the property in question, the granting of a "right of first refusal" placed Mrs. Wilde under no obligation to sell her property, it only committed her to give the optionee (plaintiff) the first right to purchase upon her terms, if and when she decided to sell.[2] But the decision as to both the time and the terms upon which the optionor would sell her property remains her exclusive prerogative so long as she acts in good faith and without any ulterior purpose to defeat the right of the optionee. This freedom of choice of the optionor is not diminished or adversely affected because a substantial part of the consideration for which she decides to sell is some unique chattel or parcel of property.

The fact appears to be that as a condition to selling her property Mrs. Wilde wanted not only the $200,000 which plaintiff was willing to pay, but also as a substantial part of that inducement she wanted the particular home in the town of Oakley. We are not made aware whether the plaintiff could or could not have purchased that particular home for her. But what does appear is that it did not do so, but offered her some other home of her choosing at about the same value (up to $50,000), which Mrs. Wilde indicated was not what she wanted.

■ In harmony with what has been said above, we are not persuaded that the trial court was in error in concluding that the plaintiff's offer to purchase did not meet the terms upon which Mrs. Wilde had offered to sell her property and that she was therefore justified in accepting the offer of defendant Church.

Affirmed. Costs to defendants (respondents).

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, Justice: (dissenting).

Plaintiffs appeal from a district court decision granting defendant's motion for summary judgment. We should reverse and grant plaintiff's motion for summary judgment and specific performance under the contract of sale.

The stipulation of the parties shows plaintiff was the assignee of a "first right of refusal," or a "preemptive right," to which the real property owned by defendant Wilde was subject. This court recognized at an early date that a preemptive right is a valuable contract right and since "there is nothing unfair or unjust about such a provision" the court will enforce it.[1] Further, this court has recognized that a preemptive right is *not* an option until such time as the promissor chooses to sell the land. At that time the promisee "has the first opportunity to purchase the property at the *price* at which the owner will sell to anyone."[2] (Emphasis is supplied.) A preemptive right is a valuable contract right because of the flexibility it allows. A preemptive right provision need state nothing

1. *Fischer v. Johnson*, Utah, 525 P.2d 45 (1974); *Cummings v. Nielson*, 42 Utah 157, 129 P. 619 (1912); 5 Williston on Contracts, Sec. 677; 17A C.J.S. Contracts § 468.

2. *Chournos v. Evona Inv. Co.*, 97 Utah 335, 93 P.2d 450 (1939); 77 Am.Jur.2d, Vendor and Purchaser, Sec. 49; 91 C.J.S. Vendor and Purchaser § 19.1 (pocket part).

1. *Cummings v. Nielson*, 42 Utah 157, 129 P. 619, 622 (1912).

2. *Russell v. Park City Utah Corp.*, 548 P.2d 889, 891 (Utah, 1976).

more than, if the promissor at any time chooses to sell, then the promisee has the right to purchase at whatever price and under whatever terms the promissor is willing to accept from a third party. This arrangement allows the seller to take advantage of price fluctuations while leaving the buyer free to decide whether he will exercise his preemptive right.

The flexibility of the preemptive right allows for differing interpretations of its exact terms but the courts have consistently disallowed attempts to deprive the holder of his right for which "a valuable consideration" has been paid.[3] The specific language in question gave the holder (plaintiff) of the preemptive right the opportunity to purchase "at the lowest bona fide price and upon the same terms [that the promissors were] willing to accept from any other vendee." Research does not reveal any prior case in which a party has attempted, or a court has found it necessary, to construe the above language to allow the promissor to accept a third party offer for consideration other than money. Granting, however, that a third party offer could be for value other than money it is painfully obvious the promissor, regardless of any motive of good or bad faith, cannot demand that the promisee, to exercise his right, must offer the exact item of value which the third party has offered. In other words "[w]here liability under a contract depends on a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it."[4]

Further, there is no doubt that since a preemptive right is a contract the promisee must "manifest a definite intention to accept the offer and every part thereof . .," when confronted by a third party offer acceptable to the promissor.[5] Considering the unique nature of the preemptive right which allows the exact terms of a contract to be fixed at an undetermined future point, by the offer of someone not a party to the preemptive right contract, the promisee has only the obligation to meet the third party offer by a corresponding offer equal in value. It is clear plaintiff (promisee) was ready and willing to match the third party offer, not only in monetary amount, but also by offering to purchase for defendant (promissor) any house equal (or greater by $2,000) in value to the house which the third party was offering. It seems quite clear from the factual setting the third party had control (an option to purchase) over the house which was included in its offer to Mrs. Wilde.

To require anything more of the promisee would in great measure destroy the evident purpose of the right of first refusal.

**3.** *Cummings v. Nielson*, 42 Utah 157, 129 P. 619, 622 (1912). See also *Socony-Vacuum Oil Co. v. Texas Co.*, D.C., 113 F.Supp. 514 (1953); *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 171 A.2d 736 (1961); *Barling v. Horn*, 296 S.W.2d 94 (Mo.1956); *R. F. Robinson Co. v. Drew*, 83 N.H. 459, 144 A. 67 (1928); *Tamura v. De Iuliis*, 203 Or. 619, 281 P.2d 469 (1955); *Driebe v. Fort Penn Realty Co.*, 331 Pa. 314, 200 A. 62 (1938).

**4.** *Gulf Oil Corp. v. American Louisiana Pipe Line Co.*, 6 Cir., 282 F.2d 401, 404 (1960); 5 Williston, Contracts § 677 (3d ed. 1961).

**5.** *R. J. Daum Const. Co. v. Child*, 122 Utah 194, 247 P.2d 817, 819 (1952).