E. A. RUSSELL and Martell E. Russell,
Plaintiffs and Respondents,

v.

PARK CITY UTAH CORPORATION et al.,
Defendants and Appellants.

No. 14124.

Supreme Court of Utah.

April 8, 1976.

Don R. Strong, Springville, for defendants-appellant.

Arthur H. Nielsen and Bruce Findlay, of Nielsen, Conder, Henriod & Gottfredson, Salt Lake City, for plaintiffs-respondents.

CROCKETT, Justice:

Plaintiffs Russell sued to terminate all rights of defendant Park City Utah Corporation in a lease for nonpayment of rent. Plaintiffs' motion for summary judgment was granted, and defendant appealed. We remanded for trial.[1] From a judgment terminating both the lease and an option to purchase contained therein, defendant appeals, contending that there was no termination of the lease, and that even if there was, the option to purchase did not fall with it.

Defendant's predecessor obtained a ten-year lease with an option to purchase on March 31, 1967. On July 31, 1967, defendant's predecessor subleased the land, located in Summit and Salt Lake Counties, to Robert W. Ensign, who, within the next two or three months, assigned the lease to Ski Park City West, Inc., herein called Park West, which has since been in possession.

The lease covered some 1,987 acres, and called for rental payments of $2.50 per acre per year. Defendant was to develop the land as a ski resort by clearing runs, installing lifts and other facilities. (Plaintiffs reserved the right to graze their sheep on the land every year between May 15 and November 1.) The lease contained this provision, in Paragraph VIII, as to forfeiture:

No default of Lessee in any of the provisions hereof shall constitute a basis for forfeiture of this lease unless the same shall continue for more than forty-five *(45) days after written notice* to Lessee specifying of what the default consists, and in the event *Lessee fails to correct* said default within such further time as is *reasonably* necessary to cure same,

Lessee shall quit and surrender the premises to Lessor. . . .

The option to buy provided that the lessee (defendant) had the exclusive option to buy 35 acres of property at $300 per acre, exercisable before November 15, 1967. After that date, the lessor had the right to sell any part of the land, subject to the lessee's right of first refusal at the same price any third party should offer. Paragraph VI of the lease provided that the lessees (defendants) would deposit $2,000 with plaintiffs as consideration for the option, in addition to all other covenants in the lease, and that, if the option was not exercised before November 15, 1967, the deposit would be applied to the rental payments for 1967. The defendant exercised the option as to part of the land in May, 1967.

The annual rental payments were made for 1967, 1968 and 1969. Late in 1970 a dispute arose between defendant and its sublessee, Park West, as to money owed by the latter to defendant. The defendant instructed Park West to make payments directly to plaintiffs, but Park West refused. The defendant failed to make the rental payment on November 1, 1970, as required. In February, 1971, the defendant again instructed Park West to make its payments to plaintiffs, and again Park West refused. On March 11, 1971, plaintiffs sent a letter to defendant stating that if the rent was not paid within 45 days, they would declare the lease terminated. In a letter dated March 29, 1971, plaintiffs' attorney reaffirmed the letter of March 11, and set April 26, 1971, (45 days from March 12) as the deadline for payment. The defendant did not meet that demand, but on June 7, 1971, tendered payment which the plaintiffs refused.

It was on those facts that the trial court granted the plaintiffs' motion for summary judgment. We reversed because there were disputes concerning the defendant's receipt of the letter and other circumstances pertaining to the forfeiture. After remand

1. *Russell v. Park City Utah Corporation,* 29 Utah 2d 184, 506 P.2d 1274 (1973).

and upon the trial, the court found the disputed issues in favor of the plaintiffs and that the lease had been terminated in accordance with its terms.

■ Defendant now argues that the procedure followed by the plaintiffs, giving it only 45 days to remedy its default, was not in conformity with Paragraph VIII of the lease quoted above, which gives it the 45 days after written notice, plus "such further time as is reasonably necessary to cure" the default. Under the findings and determination made by the trial court we do not confront the question as posed by the defendant. The notice was received on March 12, 1971, and the trial court found that the defendant made no attempt to pay the rent during the 45-day grace period, or during the following six-weeks until the tender of June 7, 1971. The problem here is not what plaintiffs would or should have done if the defendant had made the tender at some earlier time. We are of the opinion that there is a reasonable basis in the evidence for the trial court's finding that the tender was not made within a reasonable time and that the plaintiffs were justified in refusing the tender and terminating the lease.

■ It is true, as defendant argues, that forfeitures are not favored in the law, and that forfeiture provisions will be strictly construed against the one who seeks to enforce them.[2] But it is also true that parties are free to contract according to their desires in whatever terms they can agree upon; and further, that the contract should be enforced according to its terms, unless that result is so unconscionable that a court of equity will refuse to enforce it.[3] No such circumstance appears to exist here.

■ The foregoing affirmance of the termination of the lease cuts the foundation out from under the defendant's argument that the plaintiffs had waived their right of forfeiture of the lease by accepting rent from defendant's sublessee, Park West. It is true that the latter had been the sublessee of the defendant and had been in possession of the property practically from the beginning of the lease term. Nevertheless, after the lease was terminated as delineated above, the plaintiffs were free to rent the property to Park West or anyone else, as the trial court correctly ruled.

■ The other aspect of this case relates to the options to purchase given to the lessee (defendant). Paragraph VI of the lease provided:

Lessors give and grant to Lessee the exclusive option to purchase thirty-five (35) acres of property. . . .

This option to purchase shall be exercised by Lessee on or before the 15th Day of November, 1967. . . .

The defendant did exercise this option as to part of the thirty-five acres before November 15, 1967. The problem of more critical concern here involved the provision, referred to above, which granted to the defendant the "first right of refusal" to purchase any part of the land during the "entire term" of the lease. We note awareness that what is often called "the right of refusal" is not the same as an option, wherein the optionee has a definite right to purchase, whereas, the right of refusal has no effect until and unless the party granting it (plaintiffs here) decides to sell. If he does so decide, then the right of refusal does become an option in that its possessor has the first opportunity to purchase the property at the price at which the owner will sell to anyone.[4] In this instance, for the purpose of determining whether this right of refusal survived the termination of the lease, we think the same rule applies as that which governs options contained in leases: that is, if by the express terms of the option, it can be seen as independent

2. *Green v. Palfreyman,* 109 Utah 291, 166 P.2d 215 (1946).

3. *Jacobson v. Swan,* 3 Utah 2d 59, 278 P.2d 294 (1954); *Perkins v. Spencer,* 121 Utah 468, 243 P.2d 446 (1952) and cases cited therein.

4. *Chournos v. Evona Investment Co.,* 97 Utah 335, 93 P.2d 450 (1939).

of the other covenants of the lease, and is supported by a valid consideration, it can continue in existence notwithstanding the lease's termination.[5]

There are two provisions of the lease which have a bearing on the problem. Paragraph VI of the lease reads:

> As a further consideration for the above option, and other privileges to purchase hereinafter recited, and in addition to the other covenants and conditions contained in this agreement, Lessee agrees and herewith deposits with Lessors the sum of $2,000.00 cash. . . .

To be considered in connection with the foregoing is the provision of the next paragraph, No. VII, which states:

> *Lessee* from and after the 1st day of November, 1968, *has the irrevocable right to purchase* all or a portion of the subject property not theretofore purchased by Lessee from Lessors . . . said right of purchase to *remain in existence during the entire term of the lease.* [All emphasis herein added.]

██ The parties are in sharp disagreement as to the meaning of the just quoted language of the lease, particularly the emphasized portion. Defendant's position is that the covenant that the right of purchase shall exist "during the entire term of the lease" is a severable covenant, supported by separate consideration, and exists independently of the other provisions of the lease for the entire ten-year term thereof. Whereas, plaintiff contends to the contrary and that it was intended as an integral part of the total composite of the lease; and when the lease was forfeited and terminated, this covenant fell with it. In view of the lack of certainty in the language of the lease, the trial court was justified in admitting extraneous evidence as to what was intended.[6] This was done and on disputed evidence, the

court found in accordance with the plaintiffs' position as just stated.

Affirmed. Costs to plaintiffs (respondents).

HENRIOD, C. J., and ELLETT and TUCKETT, JJ., concur.

MAUGHAN, Justice (dissenting).
Dissent.

Given the language of Paragraph VI of the lease, that the $2,000 cash was a further consideration for the option, and in addition to the other covenants, I am of the opinion that the covenant controlling the option was independent; and thus not dependent upon the subsistence of the lease.

5. *Prout v. Roby*, 82 U.S. (15 Wall.) 471, 21 L.Ed. 58 (1872) ; and see, generally, 10 A.L.R.2d 884, Annot.—Tenant's Option to Purchase.

6. *Penn Star Mining Co. v. Lyman*, 64 Utah 343, 231 P. 107 (1924) ; *Ewell & Son, Inc. v. Salt Lake City Corp.*, 27 Utah 2d 188, 493 P.2d 1283.