J. Desmond **BESS** and Kristine Bess, Plaintiffs and Appellants,

v.

Ronald L. **JENSEN** and Patricia Jensen, Defendants and Respondents.

No. 880394–CA.

Court of Appeals of Utah.

Nov. 2, 1989.

---

Bradley R. Jones (argued), Ashton, Bruanberger, Poulsen & Boud, P.C., Murray, for plaintiffs and appellants.

Frederick A. Jackman (argued), Orem, for defendants and respondents.

Before DAVIDSON, BILLINGS and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

J. Desmond Bess and Kristine Bess ("Besses") appeal from a judgment entered by the Fourth District Court terminating the leasehold interest of respondents Ronald L. Jensen and Patricia Jensen ("Jensens"), but refusing to terminate their option to purchase property owned by the Besses. We affirm.

The parties submitted a written stipulation of facts and then agreed to "augment [these facts] by oral proffers." This is an unusual procedure particularly where the parties claim different intentions for entering into the lease and option agreements at issue.[1]

The trial court in its findings and conclusions focused on the written stipulated facts and the terms of the written agreements while ignoring these self-serving proffers. We agree that the "proffered" testimony was of little help in resolving the case. The relevant witnesses, particularly the parties, should have been called to testify as to their intent in entering these related contracts.

We rely upon and thus recite the facts as reflected in the written agreements and the stipulated facts. The Besses and Jensens entered into a written, three-year lease agreement dated March 20, 1985, in which the Jensens agreed to pay $462.47 per month in rent to the Besses to lease their home. By a separate, written option agreement dated April 1, 1985, the Jensens also acquired the exclusive right to purchase this home located in Provo, Utah. In consideration for their six-month option, the Jensens paid $2,500, and this option was renewable for five additional six-month periods provided that $2,500 was paid for each additional period prior to the expiration of the previous period with an extra $3,000 due at the exercise of the final option. The option payments were to be credited against the purchase price under the contract.

The option contract refers to the lease between the parties, but contains no language providing the option was contingent upon satisfactory performance under the lease. The lease states it will automatically terminate if the option to purchase is exercised.

The trial court found the Jensens were in default under the lease because they had failed to make timely payments and therefore terminated their leasehold interest. The court, however, refused to terminate the Jensens' option to purchase the Besses' home because the Jensens had complied with the terms of the option agreement by making each required payment.

On appeal, the Besses argue the lease and option agreements were one integrated contract and thus the termination of the lease agreement, as a matter of law, terminated the Jensens' option to purchase their property. Thus, the sole issue on appeal is whether the lease and option agreements

---

1. Counsels' proffers consisted mostly of argument as to the legal effect of the option and lease agreement. However, some statements of counsel purported to reflect what witnesses, not even their clients, would testify. The Besses' counsel stated "if we invited the agent for security title that typed up these two documents, the lease and the option agreement, that he would testify that they were related to each other and they were both signed with the basis and understanding that one was contingent upon the other."

should be considered one integrated contract under which the termination of the lease agreement, because of nonpayment of rent, automatically terminated the option agreement.

■ To resolve this issue, we must determine what the Besses and the Jensens intended when entering into the lease and option agreements. The "[i]ntent of the parties to a contract is a question of fact, and normally we will not overturn a trial court's findings of fact unless they are 'clearly erroneous.'" *Sacramento Baseball Club, Inc. v. Great N. Baseball Co.*, 748 P.2d 1058, 1059–60 (Utah 1987) (citing Utah R.Civ.P. 52(a)). However, "[w]hen a trial court relies on stipulated facts to decide a case this Court does not apply the clearly erroneous standard, but will sustain the lower court's decision only if convinced of its correctness." *Id.* at 1060. This principle is equally compelling when stipulated facts are supplemented by "proffers" of counsel as here.

We look first to the language of the two written agreements and the circumstances surrounding their execution to determine if the parties intended to enter one or two separate and independent contracts. *See Sacramento Baseball*, 748 P.2d at 1060.

■ A significant factor is whether each agreement is supported by a separate valid consideration. The Utah Supreme Court, in deciding a similar lease/right of first refusal termination case, stated:

> [F]or the purpose of determining whether this right of refusal survived the termination of the lease, we think the same rule applies as that which governs options contained in leases: that is, if by the express terms of the option, it can be seen as independent of the other covenants of the lease, and is supported by a valid consideration, it can continue in existence notwithstanding the lease's termination.

*Russell v. Park City Utah Corp.*, 548 P.2d 889, 891–92 (Utah 1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 162, 50 L.Ed.2d 138 (1976).

■ The Besses argue that, under *Sacramento Baseball* and *Russell*, we must reverse the trial court's decision refusing to void the option agreement. We find *Sacramento Baseball* clearly distinguishable from this case. In *Sacramento Baseball*, the court found the sales and consultation contracts were separate means to effectuate the single purpose to sell a baseball franchise. There is nothing in the stipulated facts to support the conclusion that the lease and option agreements in this case were for a single purpose. The only reference to their relationship in the stipulated facts is that the documents "were related to each other." The proffers of counsel are, not surprisingly, in dispute as to whether the option agreement was contingent on the lease agreement. Furthermore, unlike the agreements in *Sacramento Baseball*, here each agreement was supported by separate consideration. The Jensens were required to pay monthly lease payments in order to maintain their lease agreement. Under the option agreement, the Jensens were required to pay $2,500 every six months to maintain their option to purchase the property.

Furthermore, unlike *Russell*, there is no language in either the lease or option agreement to support an inference that the parties intended the option agreement to terminate if the Jensens defaulted under the lease agreement. In *Russell*, the single written agreement contained a lease and an option and had a provision which stated "said right of purchase to *remain in existence during the entire term of the lease.*" *Russell*, 548 P.2d at 892. The court, after admitting extraneous evidence to determine what the parties intended by this phrase, concluded this language meant the option was to terminate if the lease terminated. *Id.* No similar provision appears in the option and lease agreements signed by the parties in this case. Rather, the option clearly states it is dependent on the $2,500 option payment. The lease agreement states it is to terminate if the option to purchase is exercised, but there is no similar provision stating the Jensens' rights under the option agreement are to terminate if they default under the lease.

Forfeitures are not favored and certainly should not be inferred. *Russell,* 548 P.2d at 891. Though the trial court did not make a specific finding that the agreements were independent contracts, its order infers such a conclusion. We think that conclusion is correct given the language of the separate, written agreements, and the fact that each is supported by independent consideration.

Thus, we affirm the trial court's decision terminating the Jensens' rights under the lease agreement but finding the Jensens' rights under the option agreement were viable.

DAVIDSON and JACKSON, JJ., concur.