2000 Utah Ct. App. 5

Bruce A. LEFAVI, an individual, Plaintiff and Appellee,

v.

Richard K. BERTOCH, an individual; and William E. Poulson, an individual, Defendants and Appellants.

No. 981392–CA.

Court of Appeals of Utah.

Jan. 13, 2000.

**818**

Ronald C. Barker, Salt Lake City, for Appellants.

Douglas E. Griffith, Kesler & Rust, Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., BENCH, and ORME, J.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Richard K. Bertoch and William E. Poulson appeal from a judgment awarding damages with prejudgment interest to Bruce A. Lefavi, claiming the trial court erred in determining Lefavi's proportional share of investment proceeds and in awarding prejudgment interest. We affirm.

## BACKGROUND [1]

¶2 In mid–1975, an unregistered partnership, Richard's Street Development Company (Richard's Street), acquired an interest in real property located near the airport in Las Vegas, Nevada (the Las Vegas Property). Bertoch and Poulson each owned an interest in Richard's Street.[2] Dasco, Inc., a Nevada corporation, and Dudley Smith, a Nevada resident, held the remaining interest in the Las Vegas Property. By 1978, the Las Vegas Property consisted of three parcels of property known to the parties as Lots 8, 10, and 11.

¶3 On July 19, 1978, Bertoch met with Lefavi to discuss the possibility of Lefavi becoming an investor and acquiring an interest in the Las Vegas Property. Bertoch told Lefavi that if he invested he would be participating in Bertoch and Poulson's joint interest in the Las Vegas Property. Bertoch further represented that when the properties were sold, Lefavi would be reimbursed for his investment, plus 8% per annum interest and a pro-rata share of the profits, which would be determined by the total monies invested by Lefavi compared to the total monies invested by Bertoch and Poulson.

¶4 Based on these assertions, Lefavi gave Bertoch an initial investment of $6,600. The

agreement among the parties was memorialized in a memorandum drafted and signed by Bertoch, dated July 19, 1978. In 1979, the terms of the investment were changed to a purely proportional basis. The trial court found that under this agreement, memorialized in a memorandum dated April 19, 1979:

> Lefavi's investment of a proportional interest in the Las Vegas Properties was to be determined as follows: the total proceeds received by Bertoch and Poulson from the sale or lease of the Las Vegas Properties, less reasonable and anticipated closing costs and other expenses relating to such closings, resulting in proceeds which would then be divided among Bertoch, Poulson, and Lefavi in proportion to the total monies each had actually contributed to the Las Vegas Properties.

Between July 1978 and December 1980, Lefavi made additional payments, investing a total of $68,875.

¶5 In June 1983, Lot 10 was sold. Bertoch and Poulson told Lefavi that no proceeds from the sale were paid to any of the investors because all the sale proceeds were used to pay other debts, encumbrances, and obligations against the remaining parcels of property. Notwithstanding this representation, Bertoch and Poulson each received proceeds from the sale of Lot 10, and each reported those proceeds on their 1983 tax returns.

¶6 In 1985, portions of Lots 8 and 11 were sold. After this sale, Bertoch and Poulson each reported monies received from the sale on their 1985 tax returns. In December 1988, Bertoch and Poulson sold the remaining portions of the Las Vegas Property to Las Vegas Resorts, Inc. Las Vegas Resorts, Inc., paid a portion of the sales price by transferring 28,650,000 shares of restricted stock in Las Vegas Resorts, Inc. to Bertoch and Poulson. Again, Bertoch and Poulson each reported proceeds from this sale on their 1989 tax returns.

---

1. We recite the facts in a light most favorable to the trial court's findings of fact. *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline,* 909 P.2d 225, 228 (Utah 1995).

2. Bertoch and Poulson claim that, prior to 1978, they each owned only a one-fifth interest in Rich-

ard's Street. They assert that they purchased the remaining three-fifths of Richard's Street in 1978, for $665,109, thus acquiring ownership of a one-half interest of the Las Vegas Property. These assertions, however, are contrary to the trial court's findings of fact.

¶ 7 Between 1983 and 1991, when Lefavi inquired about the status of his investment, Bertoch and Poulson told him no sales had occurred after the sale of Lot 10. In September 1991, Lefavi, unaware of the sale of Lots 8 and 11, approached Bertoch, requesting that his name be placed on Clark County records as a partial owner of the Las Vegas Property. At this time, Bertoch told Lefavi the properties had been sold and that no proceeds were distributed to either Bertoch or Poulson as a result of the sales. Bertoch also told Lefavi the only consideration he and Poulson received was restricted stock in Las Vegas Resorts, Inc. Bertoch presented Lefavi with two stock certificates, totaling 716,-250 shares of Las Vegas Resorts stock, 10% of Bertoch and Poulson's holdings. Bertoch represented to Lefavi that the stock certificates constituted a 100% reimbursement of Lefavi's interest in the Las Vegas Property and that no further proceeds had been received by Bertoch and Poulson.

¶ 8 In December 1991, Lefavi contacted Dudley Smith, another owner of the Las Vegas Property, and learned for the first time that the sale of the properties had yielded substantial proceeds. Lefavi then filed suit to recover his share of the proceeds from the sale of the Las Vegas Property.

¶ 9 During trial, the parties presented conflicting evidence regarding the amounts of money each had invested in the Las Vegas Property. Bertoch and Poulson admitted they had failed to keep complete accounting records. As a result, each party employed accounting experts to determine the contested amount. During the trial, the parties entered into a stipulation regarding the appropriate accounting method, the amounts each had contributed to the Las Vegas Property investment, and the proceeds received from the sale of the properties.

¶ 10 The stipulation included both minimum and maximum damages to which Lefavi was entitled because a number of claimed offsets, expenditures, and payments remained disputed. The maximum damages calculation was based on only the undisputed investment figures. The parties agreed that Bertoch and Poulson invested $1,440,367.95 in the Las Vegas Property and that Lefavi invested $68,875. The parties also agreed that Bertoch and Poulson received $3,203,875 from the sale of the Las Vegas Property and $96,158 as proceeds from a sublease on one of the lots, totaling $3,300,033 in proceeds. The stipulation calculated Lefavi's proportional share based on these undisputed amounts as 5.27% of the total profit, or $166,-880.

¶ 11 The stipulation also included a minimum damages calculation based on expenditures allegedly made by Bertoch and Poulson and alleged payments to Lefavi. Among the disputed credits were commission and buyout costs related to the Richard's Street partnership. Additional disputed amounts included general and administrative expenses. Bertoch and Poulson argued Lefavi's total damage award should be reduced by the amounts listed in the additional fact disputes section of the stipulation.

¶ 12 At trial, the parties presented evidence and testimony on these disputed amounts. The trial court found there was insufficient credible or admissible evidence to support Bertoch and Poulson's claims of other payments to Lefavi, adjustments to the parties' proportional interests, or offsets and expenses that would reduce Lefavi's entitlement to damages.[3] The trial court entered a judgment in favor of Lefavi, finding breach of contract, fraud, conversion, and breach of fiduciary duties. In awarding damages to Lefavi, the trial court accepted the maximum damages calculation in the parties' stipulation.

¶ 13 The trial court used the parties' stipulated figures to determine that Lefavi's pro-

---

**3.** The trial court found
[t]here was insufficient credible or admissible evidence presented during the course of the trial which would support Bertoch and Poulson's claims that the following items relate to or reduce or affect the proceeds due Lefavi from his investment in the Las Vegas Properties: (a) payments of commissions to Hansen and Bova; (b) a buy out of DuBois; (c) a buy out of Daines and Nelson; (d) deduction for additional general and administrative expenses; (e) a payment to Lefavi of $32,182.00; (f) amounts paid to Lefavi from stock profits; and (g) amounts paid to Lefavi on stock transactions.

portional share of the profits was 5.27%, or $98,004. Based on these findings, the trial court awarded Lefavi his original investment, plus his proportional share of the proceeds, minus the proceeds paid to Lefavi in the form of Las Vegas Resorts, Inc. stock, for a total net award of $159,717. The trial court further determined that prejudgment interest was applicable and necessary in order to fully compensate Lefavi and to prevent unjust enrichment. The trial judge awarded prejudgment interest, calculated from the dates on which proceeds were received by Bertoch and Poulson, totaling $96,482. Bertoch and Poulson appeal the trial court's calculation of damages as well as its award of prejudgment interest.

## CALCULATION OF DAMAGES

¶ 14 Bertoch and Poulson assert that the trial court erred in calculating each party's proportional share of the Las Vegas Property investment by misapplying the damages stipulation, failing to apply buy-out and commission costs, omitting credit payments made to Lefavi, and failing to correct mathematical errors. Bertoch and Poulson argue the appropriate standard of review is correctness because they challenge the trial court's application of the stipulation rather than the trial court's findings of fact. *See Bess v. Jensen,* 782 P.2d 542, 544 (Utah Ct.App.1989) (citations omitted) ("When a trial court relies on stipulated facts to decide a case this Court does not apply the clearly erroneous standard, but will sustain the lower court's decision only if convinced of its correctness.").

¶ 15 Although Bertoch and Poulson correctly cite the standard of review for factual findings based on stipulated facts, *see id.,* this standard is not applicable in this instance. The trial court adopted the maximum damages calculation set forth in the stipulation, but the findings Bertoch and Poulson challenge were not based on the stipulation. The stipulation itemized the amounts claimed to have been paid as buy-out and commission costs and alleged payments to Lefavi, indicating that the applicability of these amounts was disputed. The trial court then made the factual findings at issue based on the evidence presented rather than the stipulation. Bertoch and Poulson's arguments all relate to the trial court's failure to accept their description of their investment in the Las Vegas Property. Consequently, their challenges address findings of fact made by the trial court after considering evidence and testimony offered by the parties.

¶ 16 "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a). When a reasonable basis exists for the trial court's award of damages, this court will affirm the damage award on appeal. *See Gillmor v. Gillmor,* 745 P.2d 461, 462 (Utah Ct.App.1987), *cert. denied,* 765 P.2d 1278 (Utah 1988); *see also Breinholt v. Breinholt,* 905 P.2d 877, 882 (Utah Ct.App.1995) (explaining that trial court's actions regarding valuation of property interests entitled to presumption of validity).

¶ 17 To successfully challenge the trial court's findings of fact on appeal, Bertoch and Poulson must " 'marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be "against the clear weight of the evidence, thus making them clearly erroneous." ' " *Valcarce v. Fitzgerald,* 961 P.2d 305, 312 (Utah 1998) (quoting *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (citations omitted)). When an appellant fails to marshal the evidence, "we refuse to consider the merits of challenges to the findings and accept the findings as valid." *Oneida/SLIC v. Oneida Cold Storage & Warehouse,* 872 P.2d 1051, 1053 (Utah Ct.App.1994) (quoting *Mountain States Broadcasting Co. v. Neale,* 783 P.2d 551, 553 (Utah Ct.App.1989)).

¶ 18 Bertoch and Poulson fail to marshal the evidence in support of the trial court's factual findings. Instead, Bertoch and Poulson present selected facts and base their arguments solely on the stipulated amounts of certain transactions. Bertoch and Poulson assert the stipulation makes

marshaling the evidence irrelevant because the appellate court "is as well equipped as the trial judge to apply the numbers to come up with a proper damage figure." The stipulation, however, presents no evidence regarding whether any of the disputed transactions occurred; instead, the stipulation merely includes amounts for disputed transactions. Because Bertoch and Poulson failed to marshal the evidence supporting the trial court's factual findings, we accept the trial court's findings as valid. *See id.*

¶ 19 Furthermore, our own review of the record reveals ample evidence supporting the trial court's damages award. Based on the evidence, the trial court reasonably determined that the claimed buy-out and commission costs paid by Bertoch and Poulson were not part of their investment in the Las Vegas Property. Several witnesses, including Bertoch, testified that the other partners in Richard's Street did not invest in the Las Vegas Property. In addition, the checks presented during trial, which Bertoch and Poulson claim were for the disputed costs, contain memos indicating purposes other than buy-out costs.[4]

¶ 20 The record also supports the trial court's finding that the amounts paid to Lefavi between 1983 and 1991 were not related to the Las Vegas Property. The trial court heard conflicting testimony on this issue. Lefavi offered evidence indicating these payments were unrelated to the Las Vegas Property, and that the Las Vegas Resorts, Inc. stock given to Lefavi on September 19, 1991, constituted his sole reimbursement for his investment in the Las Vegas Property. In resolving this issue, the trial court neces-

sarily relied on credibility determinations. The trial court is "in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). With that in mind, we cannot say the trial court's finding on this matter was clearly erroneous.

¶ 21 Accordingly, we conclude Bertoch and Poulson have wholly failed to demonstrate that the trial court abused its discretion in determining damages payable to Lefavi or in its findings of fact related to that calculation.[5] Therefore, we affirm the damages award.

## PREJUDGMENT INTEREST

¶ 22 Bertoch and Poulson also argue the trial court erred in awarding prejudgment interest because the damages were not calculable with mathematical certainty prior to trial. We disagree.

¶ 23 The trial court's decision regarding entitlement to prejudgment interest is a question of law, which this court reviews for correctness. *See Cornia v. Wilcox,* 898 P.2d 1379, 1387 (Utah 1995). As such, we accord no deference to the trial court's decision. *See Andreason v. Aetna Cas. & Sur. Co.,* 848 P.2d 171, 177 (Utah Ct.App.1993).

¶ 24 Prejudgment interest is awarded "to compensate a party for the depreciating value of the amount owed over time and, as a corollary, [to] deter[ ] parties from intentionally withholding an amount that is liquidated and owing." *Trail Mountain Coal Co. v. Utah Div. of State Lands &*

---

4. During Bertoch's testimony at trial, various checks were offered as exhibits—checks which Bertoch argued were used to buy-out the interests of other Richard's Street partners. However, several checks were made out to parties other than those Bertoch alleged he was buying out, such as "John Bollinger" and "Valley Bank." Some of the checks also contained memos indicating other purposes, such as "return of loan for use of fuel."

5. Bertoch and Poulson argue the trial court erred in failing to correct a mathematical error in the maximum damage calculation. They assert that when computed correctly, Lefavi's proportional share is 4.56% rather than 5.27%, reducing his award to $84,800.72. Bertoch and

Poulson presented this alleged mathematical error to the trial court after receiving the court's proposed findings and conclusions. Lefavi supplied the court with an affidavit from his accounting expert, Gert Foerster, who determined the proper proportional share was 5.27%. After examining this evidence, the trial court issued its Final Judgment and Order, stating that Lefavi's proper proportional share was 5.27%. The trial court's damage award came directly from the parties' stipulation and is supported by the supplemental calculations submitted by Foerster. As such, the trial court's award was consistent with evidence presented on this issue and was not clearly erroneous.

*Forestry,* 921 P.2d 1365, 1370 (Utah 1996), *cert. denied,* 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997). A prejudgment interest award is proper when "the damage is complete, the loss can be measured by facts and figures, and the amount of loss is fixed as of a particular time." *Andreason,* 848 P.2d at 177 (citing *Bjork v. April Indus., Inc.,* 560 P.2d 315, 317 (Utah 1977), *cert. denied,* 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977)). Further, a court may only award prejudgment interest if damages are calculable within a mathematical certainty. *See Bailey–Allen Co. v. Kurzet,* 876 P.2d 421, 427 (Utah Ct.App.1994).

> For damages to be calculable with mathematical certainty, they must be ascertained "in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount rather than be guided by their best judgment in assessing the amount to be allowed for past as well as for future injury, or for elements that cannot be measured by any fixed standards of value."

*Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 784 P.2d 475, 483 (Utah Ct. App.1989) (quoting *Fell v. Union Pac. Ry. Co.,* 32 Utah 101, 88 P. 1003, 1007 (1907)).

¶ 25 In Utah, courts have allowed prejudgment interest in contract actions when the fact finder works with set numbers and percentages. *See, e.g., Consolidation Coal v. Division of State Lands,* 886 P.2d 514, 524 (Utah 1994) (stating prejudgment interest proper when underpayment of royalties due on coal lease could "easily and accurately be determined by multiplying the value of the coal mined during each royalty period by 8% and then deducting the royalty amounts which were timely paid for that period"); *Bjork,* 560 P.2d at 317 (upholding award of prejudgment interest for breach of stock agreement); *Jack B. Parson Const. Co. v. State,* 552 P.2d 107, 109 (Utah 1976) (finding prejudgment interest properly awarded in judgment on contract claim when "[t]he amount due under the contract was ascertainable by calculation and it was only the method to be used in making the calculation that was uncertain"). Conversely, courts have generally not allowed prejudgment interest in cases such as personal injury, wrongful death, false imprisonment, and defamation, because the amount of damages is uncertain and must be ascertained by the fact finder. *See Bjork,* 560 P.2d at 317; *see also Andreason,* 848 P.2d at 178 (finding damages not fixed in promissory estoppel claim when fact finder must "quantif[y] the injustice caused by detrimental reliance").

¶ 26 Bertoch and Poulson argue Lefavi's damages were not calculable with mathematical certainty until the parties entered into the stipulation during trial. The damages were not certain, they contend, because complete accounting records of the investments and proceeds related to the Las Vegas Property were not kept. As a result, the parties had to hire accounting experts to trace investment and proceeds amounts using tax records and incomplete records. We find this argument unpersuasive.

¶ 27 The damages in this case were complete, the loss was measured by facts and figures, and the loss was fixed at the time of each sale. *See Andreason,* 848 P.2d at 177. Bertoch and Poulson received fixed sums of money from the sales of the Las Vegas Property. The investments of Bertoch, Poulson, and Lefavi were all calculable. The only dispute was over expenses and offsets claimed by Bertoch and Poulson, none of which was found by the trial court to have any credible basis. This is essentially a contract action in which the breaching parties may not avoid full compensation to the non-breaching party because of their failure to keep proper records, non-meritorious claims to offsets, and fraudulent failure to disclose sales and pay investment returns when they were due. Accordingly, we affirm the trial court's award of prejudgment interest.

## CONCLUSION

¶ 28 The trial court correctly applied the parties' damages stipulation and did not abuse its discretion in determining the damages payable to Lefavi nor in making its findings of fact related to the damages calculation. In addition, because Bertoch and Poulson received fixed sums of money at the time of each sale and each party's investment

was calculable, the trial court properly awarded prejudgement interest.

¶ 29 Affirmed.

¶ 30 WE CONCUR: RUSSELL W. BENCH, Judge, and GREGORY K. ORME, Judge.